KELLY TEMPORARY SERVICES, apelante, *v.* FONDO DEL SEGURO DEL ESTADO, apelado.

*Número:* AA-95-44          *Resuelto:* 23 de enero de 1997

*José L. Verdiales Morales* y *José J. Santiago*, de *Fiddler, González & Rodríguez*, abogados del apelante; *Noemí Colón Ríos* y *José M. Fernández Luis*, abogados del apelado.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

## I

Hoy nos toca resolver si de una determinación de patrono no asegurado hecha por el Fondo del Seguro del Estado (en adelante Fondo), puede solicitarse la reconsideración al Fondo. De contestarse esta interrogante en la afirmativa, debemos proceder a determinar qué efecto, si alguno, tiene la presentación de dicha solicitud sobre el término para apelar ante la Comisión Industrial establecido en el Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11.

Kelly Temporary Services (en adelante Kelly), es un patrono que tiene una póliza de seguro obrero del Fondo que cubre a más de seis mil (6,000) empleados. El 17 de julio de 1992, Kelly sometió al Fondo su declaración de nómina del año 1991–1992. En ella, Kelly informó un total de cuarenta y cuatro (44) códigos o clasificaciones para cubrir las actividades que desempeñaban sus empleados. Acompañó con dicha declaración un pago parcial por la cantidad de doscientos ochenta y un mil ciento noventa y cinco dólares con ochenta centavos ($281,195.80). El 4 de enero de 1993, Kelly remitió otro pago por la cantidad de doscientos ochenta y un mil ciento ochenta y ocho dólares con setenta y nueve centavos ($281,188.79). En esa misma fecha también remitió una carta al Fondo en la cual le informaba que aún no había recibido la notificación de cobro de primas sobre la liquidación final del año 1991–1992 ni las primas preliminares para el año 1992–1993.

En marzo de 1993, Kelly recibió una notificación de cobro de primas marcada "DUMMY", la cual incluía la liquidación final para el año póliza 1991–1992 y la prima preliminar para el año 1992–1993. Al no aparecer en dicha notificación todas las clasificaciones informadas por Kelly en su declaración de nómina 1991–1992, la Sra. María del Loretto García, Directora de Recursos Humanos de Kelly, compareció a las facilidades del Fondo y habló con el Sr. Jorge William Santiago, Jefe de la Sección de Liquidación y Cancelación de Póliza. Éste le informó que el Fondo sólo podía entrar en su sistema computarizado un máximo de veinticuatro (24) códigos, por lo que al recibir la declaración de nómina de Kelly procedió a reclasificar y eliminar códigos "por analogía" para limitarlos a la cantidad antes señalada. Eliminó, por lo tanto, veinte (20) clasificaciones que fueron informadas por Kelly en su declaración de nómina. El señor Santiago informó, además, que la notificación "DUMMY" no era final y que Kelly tenía que esperar la factura final para comparar las clasificaciones inclui-

das en la factura con las informadas por Kelly en su declaración de nómina. La notificación "DUMMY" excedía por la suma de nueve mil ochocientos cincuenta y nueve dólares con setenta y dos centavos ($9,859.72) la declaración de nómina informada por Kelly para el año póliza 1992–1993.

El 26 de abril de 1993, Kelly recibió la notificación de cobro de primas final la cual, al igual que la notificación "DUMMY", contenía solamente veinticuatro (24) códigos. Dicha notificación requería el pago de las primas en dos (2) plazos, a saber: para el primer semestre (cuyo período terminaba el 31 de diciembre de 1992), un pago de ciento treinta y cuatro mil setecientos sesenta y cinco dólares con un centavo ($134,765.01) a pagarse en o antes de 19 de mayo de 1993; para el segundo semestre (cuyo período finalizaba el 30 de junio de 1993), otro pago por la cantidad de cuatrocientos siete mil setenta y tres dólares con setenta y ocho centavos ($407,073.78) a pagarse para el mismo 19 de mayo de 1993, para un total de quinientos cuarenta y un mil ochocientos treinta y ocho dólares con setenta y nueve centavos ($541,838.79).

El 28 de abril de 1993 la señora García (de Kelly) se reunió nuevamente con el señor Santiago (del Fondo) para solicitarle el estudio por analogía que éste había realizado con relación a la declaración de nómina de Kelly y una explicación de por qué el Fondo había eliminado las clasificaciones informadas por Kelly en dicha declaración.

El 11 de mayo de 1993, Kelly efectuó un pago al Fondo por la cantidad de quinientos treinta y un mil novecientos setenta y nueve dólares con siete centavos ($531,979.07). El 19 de mayo de 1993 la señora García (de Kelly) se reunió con el señor Pablo López, funcionario del Área de Seguros del Fondo, y le solicitó una explicación de por qué existía una diferencia entre las primas tasadas por el Fondo y las computadas por Kelly de nueve mil ochocientos cincuenta y nueve dólares con setenta y dos centavos

($9,859.72). Según alega Kelly, el señor López le indicó a la señora García que solicitara una prórroga de treinta (30) días para efectuar el pago de dicha diferencia. El Fondo, en su alegato, negó haberle solicitado a Kelly que pidiese una prórroga y que ésta la hubiese solicitado, y mucho menos obtenido. Sin embargo, del expediente surge que hubo una solicitud de prórroga hecha por escrito por parte de Kelly. Alega Kelly, además, que el señor López le explicó que la prórroga le daría al Fondo la oportunidad de examinar los documentos sometidos por Kelly y notificarle copia del "estudio por analogía" que se había realizado. Continuó alegando que ese mismo día, siguiendo las instrucciones del señor López, la señora García le entregó personalmente la carta en la cual solicitaba una prórroga para efectuar el pago de la cantidad objeto de controversia —nueve mil ochocientos cincuenta y nueve dólares con setenta y dos centavos ($9,859.72)— y solicitó, además, copia del "estudio por analogía". Esta aparentemente es la carta que obra en el expediente administrativo del caso.

El 7 de junio de 1993, Kelly recibió una comunicación suscrita por el Administrador del Fondo en la cual se le indicaba que tenía una deuda por la cantidad de quinientos cuarenta y un mil ochocientos treinta y ocho dólares con setenta y nueve centavos ($541,838.79). El 9 de junio de 1993 la señora García le notificó por mensajero al Administrador del Fondo una carta en la cual se acompañaba copia de las comunicaciones anteriores, de los pagos efectuados y otros documentos relacionados a su declaración de nómina de 1991–1992.

Al no recibir contestación alguna a sus cartas de 19 de mayo y de 9 de junio de 1993, el 10 de junio de 1993, y dentro del término de la prórroga solicitada, Kelly pagó al Fondo la cantidad de nueve mil ochocientos cincuenta y nueve dólares con setenta y dos centavos ($9,859.72), que era la que estaba en controversia.

A pesar de lo anterior, aproximadamente un año más tarde, el 5 de abril de 1994, la Sra. Petra González Gonzá-

lez, Jefe de la Sección de *Status* Patronal del Fondo, le notificó a Kelly ciento veintiuna (121) decisiones declarándolo "patrono no asegurado" en relación con los accidentes ocurridos durante el año póliza 1992–1993. Adujo para esto dos (2) razones, a saber: que Kelly no tenía en su póliza ciertas clasificaciones que cubrieran a sus empleados (clasificaciones que, según Kelly, fueron eliminadas por el propio Fondo al hacer el alegado "estudio por analogía" de la declaración de nómina de Kelly), y que alegadamente Kelly pagó tardíamente el segundo semestre del año 1992–1993 (pagó el 10 de junio de 1993, cuando la fecha de pago era el 19 de mayo de 1993). Todas las decisiones notificadas incluyeron la advertencia siguiente:

> La Ley de Compensaciones por Accidente del Trabajo, en el Artículo 10, dispone que toda decisión del Administrador podrá apelarse ante la Honorable Comisión Industrial dentro de los treinta (30) días después de notificada.

El 6 de abril de 1994 la señora García (de Kelly) le escribió a la señora González, Jefe de la Sección de *Status* Patronal del Fondo, una carta en la que solicitó la reconsideración de dichas decisiones. En la carta, Kelly expresó lo siguiente:

> ... [S]olicitamos que se emita una decisión que contenga fundamentos de hecho y de derecho en los cuales el Fondo sostiene su acción de reclasificar nuestra Declaración de N[ó]mina mediante "analogía" surgiendo de la misma diferencias·en el c[ó]mputo de las primas y el riesgo de ser declarado patrono no asegurado. Solicitamos, además, que se nos notifique una certificación en el idioma inglés de todas las clasificaciones presentadas en nuestra declaración de nómina y que se proceda lo antes posible a revisar los 121 casos de patrono no asegurado contra nuestra Declaración de N[ó]mina. Es el mejor interés de Kelly Temporary Services que nuestros empleados (6,000) estén bien clasificados para evitar que puedan quedar al descubierto.
>
> Esta situación es una muy delicada y va en contra de los mejores intereses de nuestra compañía. Entendemos que estos 121 deben ser consolidados en uno y corroborados contra nuestra Declaración de Nómina.

En su alegato ante nos, el Fondo niega que la antes

citada comunicación haya consistido en una petición de reconsideración. Una lectura de dicha comunicación en el contexto de la totalidad de las circunstancias de este caso revela, sin lugar a dudas, que por medio de dicha carta Kelly pedía al Fondo que reconsiderara su decisión de *status* patronal.

El 8 de abril de 1994 la señora García (de Kelly) se reunió con la señora González (del Fondo) y le entregó una copia de la carta en la cual solicitaba reconsideración. En dicha reunión se discutieron los pormenores y méritos de la solicitud de reconsideración. La señora González indicó que estudiaría más a fondo los planteamientos de Kelly, que habría de comunicarse con el Sr. Juan Blaymayer, funcionario del Fondo, para examinar y cotejar las alegaciones del patrono y que luego se comunicaría con García para informarle la determinación final en cuanto a su reconsideración. Dicha comunicación nunca ocurrió.

El 4 de mayo de 1994 Kelly apeló ante la Comisión Industrial (en adelante la Comisión) respecto a una de las decisiones, y el 9 de mayo de 1994 Kelly recurrió a la Comisión con respecto al resto de las decisiones. Los recursos fueron consolidados por la Comisión y ésta señaló una vista para el 27 de septiembre de 1994.

El día señalado para la vista, al inicio de los procedimientos, la representación legal del Fondo invocó la defensa de falta de jurisdicción de la Comisión en los ciento veinte (120) casos apelados el 9 de mayo de 1994, por haber sido presentados fuera del término de treinta (30) días que dispone el Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*,([1]) para que el pa-

---

([1]) Dicho artículo disponía, en lo pertinente:

"...en los casos de patronos no asegurados tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez declarado no asegurado el patrono por el Administrador, teniendo el patrono un término de treinta (30) días para apelar de la decisión del Administrador declarándolo no asegurado, y el caso podrá ser visto por la Comisión Industrial, o por uno de sus Comisionados o por un oficial examinador que designe la Comisión Industrial ...." 11 L.P.R.A. sec. 11 (Sup. 1975).

trono apele ante la Comisión una decisión del Fondo en cuanto a *status* patronal. Kelly se opuso. Alegó que, a tenor con la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2165, el término había sido interrumpido al solicitar la reconsideración al Fondo.([2])

El 29 de diciembre de 1994 la Comisión notificó a Kelly una resolución en la que desestimó los tres (3) recursos sometidos por Kelly ante la Comisión el 9 de mayo de 1994, que solicitaban la revisión de la determinación de patrono no asegurado en las ciento veinte (120) notificaciones enviadas a éste el 5 de abril de 1994. En síntesis, dicha agen-

---

La Ley Núm. 63 de 1ro de julio de 1996 enmendó este artículo, eliminando toda referencia a oficiales examinadores, ya que dicha ley eliminó el puesto de Oficial Examinador de la Comisión Industrial.

([2]) La disposición vigente para la fecha en que ocurrieron los hechos establecía que:

"La parte adversamente afectada por una resolución, u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción cuya resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción. Si la agencia dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los noventa (90) días de haber sido radicada una moción acogida para resolución, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que el tribunal, por justa causa, autorice a la agencia una prórroga para resolver, por un tiempo razonable.

"La moción de reconsideración será jurisdiccional para poder solicitar la revisión judicial.—Agosto 12, 1988, Núm. 170, p. 825, sec. 3.15; Agosto 5, 1989, Núm. 43, p. 160, art. 6, ef. Agosto 5, 1989." 3 L.P.R.A. sec. 2165.

La Ley Núm. 247 de 25 de diciembre de 1995 enmendó esta sección en términos generales al eliminar la reconsideración como requisito jurisdiccional para poder acudir en revisión a los tribunales. Luego la Ley Núm. 63, *supra*, enmendó la Ley del Sistema de Compensaciones por Accidentes del Trabajo y dispuso que "[s]erá requisito indispensable para acudir en alzada a los tribunales de justicia de una resolución de la Comisión Industrial que se haya solicitado la reconsideración de la misma y ésta sea final". Art. 6 (11 L.P.R.A. sec. 8I(b)(1)).

cia resolvió que el término de treinta (30) días establecido en el Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, era jurisdiccional y que las gestiones dirigidas a que el Fondo reconsiderara no habían interrumpido el mismo. Expresó, además, que estas gestiones carecían de efecto legal.

Inconforme, Kelly presentó una moción de reconsideración ante la Comisión el 18 de enero de 1995. El 20 de enero de 1995 la Comisión notificó a las partes que la moción fue acogida. Posteriormente, el 18 de abril de 1995, dictó una resolución en reconsideración. En ésta reiteró su decisión anterior y concluyó que el Fondo no tiene capacidad en ley para reconsiderar sus propias decisiones y que le es inaplicable la Sec. 3.15 de la L.P.A.U., *supra*, pues el Fondo no efectúa procedimientos adjudicativos formales en los casos de *status* patronal. Opinó que esta función recae en la Comisión. Por tal razón, concluyó que las gestiones realizadas por Kelly ante el Fondo no interrumpieron el término para acudir a la Comisión.

Por no estar de acuerdo con dicho dictamen, Kelly acudió oportunamente ante este Tribunal al amparo del Art. 3.002(d) de la Ley de la Judicatura de 1994 y alegó la comisión de los errores siguientes:

A. Incidió manifiestamente la Comisión Industrial al resolver que la Ley Núm. 170 de 1988 no aplica a la Corporación del Fondo del Seguro del Estado y, por tanto, la reconsideración del patrono, instada bajo la Sección 3.15 de la Ley 170 y la Sección 40 del Reglamento del Fondo de 1989 (aprobado en virtud de la Ley 170), no tuvo "efecto legal" y no interrumpió el término para apelar a la Comisión Industrial.

B. Incidió manifiestamente la Comisión Industrial al no celebrar una vista pública para dilucidar todo lo relativo al trámite de reconsideración de Kelly ante la Corporación del Fondo.

C. Incidió manifiestamente la Comisión Industrial al resolver que el término de treinta (30) días para apelar de una decisión a la Comisión es un "término jurisdiccional", basando su dictamen en la sentencia sin opinión del caso de *Franco v. J.*

*Pérez & Compañía y Fondo del Seguro del Estado*, 90 J.T.S. 69, y no en lo resuelto en *Ortiz v. ACAA*, 116 D.P.R. 387 (1985), ni lo dispuesto en la Ley Núm. 170 de 1988.

D. Incidió manifiestamente la Comisión Industrial al resolver que la Corporación del Fondo carece de facultad para reconsiderar sus decisiones, contrario a lo resuelto en *Martínez v. Tribunal Superior*, 83 D.P.R. 717 (1961), y su progenie.

E. Incidió manifiestamente la Comisión Industrial al no asumir jurisdicción original en las peticiones de Kelly, contrario a lo dispuesto en el Artículo 15 de la Ley Compensatoria y *Declet v. Comisión Industrial*, 62 D.P.R. 903 (1944).

## II

En primer lugar, debemos determinar si el término de treinta (30) días que establece el Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, es un término jurisdiccional. En *Cerame López & Co. v. Alfaro*, 40 D.P.R. 449 (1930), este Tribunal señaló que las leyes que limitan el tiempo para apelar son de naturaleza jurisdiccional y mandatoria, y que los tribunales no tienen facultad para prorrogar el término a menos que el estatuto que confiere el derecho le conceda discreción para ello. En cuanto al Art. 10 en cuestión, este Tribunal ha indicado que dicho término es expreso, que no se ha dejado al arbitrio administrativo ni al judicial. *González Saldaña v. Comisión Industrial*, 89 D.P.R. 267, 273–274 (1963). Si aplicamos el razonamiento de *Cerame López & Co. v. Alfaro*, supra, al de *González Saldaña v. Comisión Industrial*, supra, es forzoso concluir que el término de treinta (30) días que aquí se trata es de naturaleza jurisdiccional, pues el estatuto no concede al organismo administrativo ni a los tribunales discreción alguna para prorrogar el mismo. Por lo tanto, una vez comienza dicho término a decursar y finaliza, sin que se haya presentado oportunamente alguna moción interruptora, se extingue el derecho a apelar y la facultad del organismo revisor para intervenir.

■ En el caso ante nos, las ciento veinte (120) decisiones en cuestión fueron notificadas por el Fondo el 5 de abril de 1994, y no fue hasta el 9 de mayo de 1994 que Kelly sometió ante la Comisión los recursos apelativos pertinentes. Por lo tanto, dichas apelaciones fueron sometidas fuera del término jurisdiccional de treinta (30) días establecido por el Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*. Ante estas circunstancias, procede resolver si la gestión realizada por Kelly ante la Sección de *Status* Patronal del Fondo —en la que solicitó la reconsideración por escrito— y las actuaciones del Fondo tuvieron el efecto de interrumpir el término para apelar administrativamente ante la Comisión.[3]

■ La Comisión concluyó que el Fondo no tiene capacidad en ley para reconsiderar sus propias decisiones. No le asiste la razón. Veamos. Primeramente, debemos aclarar que la Sec. 3.15 de la L.P.A.U., *supra*, es aplicable sólo a casos en que se solicita una revisión judicial,[4] y que la ley orgánica que crea al Fondo no le concede de forma *expresa* la facultad para reconsiderar sus propias decisiones. Sin embargo, es norma reiterada que los organismos administrativos tienen la facultad inherente para

---

[3] En sus recursos apelativos ante la Comisión Industrial (en adelante Comisión), Kelly Temporary Services (en adelante Kelly) invocó erróneamente la jurisdicción original de la Comisión para entender en esta controversia de *status* patronal, a tenor con el Art. 15 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 16. Este artículo dispone, en lo pertinente:

"En aquellos casos en que la contención sea entre el patrono y el Administrador, en relación con la cubierta de seguro —*status* patronal— si el patrono no aceptare la responsabilidad del accidente, el caso será elevado por el Administrador a la Comisión Industrial, la que decidirá la controversia siguiendo el procedimiento establecido en este Capítulo ...."

Es correcta la determinación de la Comisión en cuanto a que la jurisdicción original provista en dicho artículo se circunscribe únicamente a la responsabilidad por el accidente, de lo cual este caso no trata. Del antes citado Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, surge claramente que es el Fondo del Seguro del Estado (en adelante Fondo) el que determina en primera instancia el *status* patronal, después de lo cual el patrono puede acudir en apelación a la Comisión, quien podrá entonces revisar la decisión del Fondo.

[4] *Aponte v. Policía de P.R.*, 142 D.P.R. 46 (1996).

reconsiderar sus órdenes en cualquier momento antes de que pierdan jurisdicción sobre el caso —cuando esto sea necesario para corregir errores— independientemente de lo que se establezca por el propio estatuto que crea al organismo. *Martínez v. Tribunal Superior*, 83 D.P.R. 717, 721 (1961). El Fondo tiene, al igual que todos los organismos administrativos, el poder inherente para revisar sus decisiones.([5]) Para ello las partes tienen a su disposición

---

([5]) Cabe señalar, además, que el Reglamento del Área de Seguros del Fondo Núm. 30-03-04 de 2 de mayo de 1988, titulado Normas y Procedimientos para el Trámite y Control de la Adjudicación de Status de Patrono No Asegurado en Reclamaciones de Accidentes del Trabajo, en su Parte III(F), dispone lo siguiente:

"F. Revocación de Decisión de Patronos no Asegurados

"*En aquellos casos en los cuales se emite una Decisión de Patrono no Asegurado y que posteriormente se somete evidencia de estar asegurado se procede de la siguiente forma*:

"[Sección de Status Patronal]

"1. Recibe copia de resolución de la Comisión Industrial de Status revocando la decisión del Administrador y procede a entrar al sistema mecanizado la clave de patrono asegurado.

"2. *Cuando se recibe del Patrono No Asegurado, evidencia adicional sobre su condición de status, se procederá de acuerdo a las normas establecidas.*

"3. De dejarse sin efecto la decisión de patrono no asegurado cambiará en el sistema mecanizado la clave a la de patrono asegurado.

"4. *Después de preparar el proyecto de decisión revocatoria, el Jefe de la Sección de Status Patronal la firmará al lado izquierdo. La refiere al jefe de la División de Servicios Complementario[s] para revisión y firmará en representación del Administrador del Fondo del Seguro del Estado.*

"[Oficina de Secretaría]

"5. *Recibe la decisión revocatoria de Patrono No Asegurado y la tramita.*

"6. Coteja si el patrono que originalmente fue declarado como no asegurado apeló la decisión y de haber apelado solicitará del Negociado de Servicios Legales [que] someta moción para el archivo del caso.

"[División de Contabilidad]

"7. *Recibirá la copia de la Decisión del Administrador Revocatoria y/o la Resolución de la Comisión Industrial Revocatoria sobre Patrono No Asegurado* y procederá a:

"a) Localizar en sus archivos y récords las facturas al cobro emitidas y cancelar las mismas. Enviar al patrono carta informando qué factura al cobro fue cancelada.

"b) Notificar a la Sección de Recaudaciones[,] Cobros y Embargos regional la cancelación de factura al cobro para que descontinúe las gestiones de cobro y se cancele el embargo trabado, si alguno." (Énfasis suplido.)

Surge claramente de lo antes citado que cuando un patrono es declarado no asegurado por el Fondo, aquél tiene reglamentariamente dos opciones inmediatas: someter evidencia adicional al Fondo para que éste *reconsidere* y *revoque* su decisión previa, o puede acudir directamente a la Comisión para que ésta revise la decisión del Fondo.

los mecanismos equivalentes a los establecidos en las Reglas 47 y 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Romero Santiago v. F.S.E.*, 125 D.P.R. 596 (1990);[6] *J.R.T. v. Missy Mfg. Corp.*, 99 D.P.R. 805 (1971). Recientemente en *Aponte v. Policía de P.R.*, supra, pág. 54, esc. 7, sobre este particular y en lo pertinente, expresamos:

> Nada de lo que resolvemos aquí altera la reiterada norma de que los organismos administrativos, igual que los foros judiciales, tienen facultad inherente para reajustar sus órdenes y resoluciones de acuerdo con lo que la justicia y la razón dicten.

---

Como podrá observarse, la disposición reglamentaria faculta expresamente al Fondo a reconsiderar sus decisiones sobre *status* patronal. A la luz de los propósitos de la Ley del Sistema de Compensaciones por Accidentes del Trabajo y haciendo una lectura integral de la antes citada disposición reglamentaria, surge la clara intención de concederle al Fondo la oportunidad de reevaluar sus determinaciones sobre patrono no asegurado.

Como constancia de la práctica administrativa de reconocer la facultad del Fondo para reconsiderar sus determinaciones sobre *status* patronal, Kelly sometió unas copias de las decisiones revocatorias o enmendatorias del Fondo en los siguientes casos sobre *status* patronal: Núm. 90-07-50011-8, Núm. 35-1-20-005830, Núm. 35-1-20-23383, Núm. 92-84-03238, Núm. 92-15-20547, Núm. 92-15-02166, Núm. 92-64-02887, Núm. 92-15-02811, Núm. 92-15-04334, Núm. 92-15-04335, Núm. 93-11-20082, Núm. 93-11-20169 y Núm. 93-11-20035. Con relación a cada una de estas decisiones, el Fondo hizo una determinación inicial de patrono no asegurado por supuestos atrasos en pagos de primas. Luego, el patrono solicitó la reconsideración y aportó evidencia a los efectos de que el pago correspondiente se había hecho oportunamente. A base de esto, el Administrador del Fondo entonces emitió una decisión revocatoria de su determinación inicial sobre *status* patronal.

[6] Kelly nos plantea, además, que el Fondo en este caso actuó contra sus propios actos y carente de buena fe. De ser cierto que el Fondo no tiene capacidad en ley para reconsiderar sus decisiones sobre *status* patronal, su deber era advertírselo así a Kelly cuando éste le sometió su petición de reconsideración. Según Kelly, lo que el Fondo hizo en vez fue indicarle que el planteamiento de reconsideración sería visto y que habrían de comunicarse con aquélla para informarle la determinación final al respecto, comunicación que nunca se llevó a cabo. Luego, en la vista ante la Comisión, el Fondo alegó que ninguno de sus funcionarios tiene autoridad para emitir decisiones después de haberse emitido una decisión institucional final en el caso. Con relación a estos hechos, debe tenerse presente que "[l]a conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida". *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871, 877 (1976). Cabe señalar, además, que

"[e]l asesoramiento legal siempre, y especialmente en las oficinas públicas, debe dirigirse vigorosamente a que se haga justicia y no deben utilizarse recursos meramente legalistas para frustrarla. Como señala Castán, 'si no hemos de movernos dentro de una concepción estéril de puro normativismo, las ideas de justicia y equidad son esenciales y consustanciales a la noción del Derecho, el cual dejaría de cumplir sus finalidades morales y sociales si no aspirase a realizar la justicia, y no una justicia abstracta y teórica, sino una realista y humana acorde a las circunstancias de cada caso.' [*La Formulación Judicial del Derecho*, 2da ed. (1954), pág. 87]." *García Colón v. Srio. de Hacienda*, 99 D.P.R. 779, 787 (1971).

(Citas omitidas.) Por ello, si la parte afectada por una decisión administrativa solicita su reconsideración oportunamente, la agencia puede acogerla razonablemente, siempre que no haya perdido jurisdicción, aunque no se disponga por ley tal reconsideración.

■ Tomando en consideración todo lo antes expuesto, concluimos que el Fondo tiene la facultad para reconsiderar su determinación sobre un patrono no asegurado. Ahora bien, no habiendo un término específico fijado por ley para presentar y resolver la moción de reconsideración, una interpretación conjunta de la Ley, los Reglamentos y la L.P.A.U. nos lleva a concluir que bajo estas circunstancias regirán los principios básicos de equidad y razonabilidad. En el caso de autos, los parámetros de razonabilidad ciertamente no pueden sobrepasar los términos dispuestos en la Sec. 3.15 de la L.P.A.U., *supra*, que limitan el término que tiene tanto una parte para acudir ante la agencia mediante moción de reconsideración como la agencia para resolver dicha petición.

En el caso de autos surge con meridiana claridad la diligencia de Kelly en el pago de sus obligaciones y el cuestionamiento de las determinaciones hechas por el Fondo. Los trámites en el caso también reflejan que la actuación del Fondo dejó mucho que desear. Una vez Kelly sometió a tiempo su declaración de nómina, el Fondo procedió a hacer un estudio de reclasificación de códigos por analogía, luego del cual reclasificó algunos de los sometidos por Kelly y eliminó otros. Nunca le suministró a Kelly copia de este estudio, a pesar de Kelly haberlo solicitado y de que fue a base del mismo que se determinó la deficiencia en el pago de las primas que finalmente desembocó en la determinación de "patrono no asegurado" por parte del Fondo. El estudio y una explicación de las razones para llevarlo a cabo eran necesarios para que Kelly pudiese entablar una revisión efectiva ante la Comisión para cuestionar las actuaciones del Fondo. Cabe señalar, además, que Kelly pagó la deficiencia en controversia dentro del término solicitado

en su prórroga. Siguiendo el mismo patrón de diligencia y pronta atención de sus asuntos ante el Fondo, cuando le fue notificada un año más tarde la determinación de "patrono no asegurado", Kelly presentó tanto su petición de reconsideración ante el Fondo como su escrito de apelación ante la Comisión dentro de los términos que establece la Sec. 3.15 de la L.P.A.U., *supra*. Bajo estas circunstancias, resolvemos que Kelly actuó diligentemente al presentar tanto la moción de reconsideración ante el Fondo como el recurso de apelación ante la Comisión a tiempo.(7)

Por los fundamentos antes expuestos, *se dictará sentencia revocando la resolución de la Comisión Industrial emitida en el caso de autos y devolviendo el mismo a dicha comisión para que continúen los procedimientos de forma consistente con lo aquí dispuesto.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.

---

(7) En este sentido, la sentencia que dictamos en *Franco v. J. Pérez & Cía., Inc. y F.S.E.*, 126 D.P.R. 349 (1990), es claramente distinguible del caso de autos. En la antes citada sentencia concluimos que la Comisión carecía de jurisdicción para revocar una determinación de "patrono no asegurado" hecha por el Fondo. Allí, el patrono se demoró ochenta y ocho (88) días en solicitar reconsideración ante el Fondo, y luego ciento un (101) días más para apelar ante la Comisión a partir de que el Fondo le comunicara "que no podía acceder a tal solicitud de revisión administrativa". Íd., pág. 352. Además, no había controversia en cuanto a la cantidad que el patrono debía ni en relación con las clasificaciones hechas por el Fondo, el patrono no solicitó prórroga para pagar y su falta de diligencia en el trámite ante el Fondo, y luego ante la Comisión, fue evidente e inexcusable.