NELLY SANTIAGO MITCHELL, lesionada y apelante, *v.* CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, asegurador y apelado, y la COMISIÓN INDUSTRIAL DE PUERTO RICO, apelada.

*Número:* AA-95-17 *Resuelto:* 13 de agosto de 1996

*Fernando Martínez Vélez*, abogado de la apelante; *Víctor M. Comolli*, de *McConnel & Valdés*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos la oportunidad para pautar por primera vez asuntos relativos al procedimiento ante la Comisión Industrial para determinar si un patrono es responsable de un accidente de un empleado suyo.

I

La querellante apelante Nelly Santiago Mitchell trabajó como operaria para la compañía Concept de Puerto Rico, Inc. (en adelante Concept) hasta el 23 de agosto de 1982. El 3 de agosto de 1982, días antes de cesar sus labores en la referida corporación, Santiago presentó un informe voluntario ante el Administrador de la Corporación del Fondo del Seguro del Estado (en adelante Fondo). En el referido informe, Santiago alegó que el 8 de julio de 1981 había sufrido un accidente en su trabajo cuando se intoxicó al inhalar unos gases tóxicos mientras soldaba, por un período de dos semanas, cierto equipo con soldadura de plomo. A consecuencia de dicha intoxicación, Santiago desarrolló una condición crónica de asma bronquial.

A raíz de la presentación del informe voluntario, el Fondo realizó una investigación y, como parte de ésta, entrevistó al supervisor de la querellante, José Carrillo Sepúlveda. Éste, mediante declaración jurada ante un investigador del Fondo, señaló que desconocía que la lesionada hubiese tenido un accidente en su trabajo. Además, como parte de su declaración, Carrillo expresó lo siguiente: que la agencia federal O.S.H.A. había efectuado un estudio de las operaciones de Concept y que como resultado de ésta concluyó que no hacía falta protección alguna para llevar a cabo el procedimiento de soldadura, pero que aun así, la compañía les brindaba protección a sus empleados; que de los tres años que la lesionada estuvo trabajando con la compañía, sólo estuvo soldando por un período de dos semanas; que la compañía tenía empleados que habían trabajado varios años en la soldadura de equipo y no les había

afectado de modo alguno, y que no comprendía por qué la lesionada alegaba haber trabajado soldando con plomo, ya que Concept sólo utilizaba soldadura de estaño.

Finalizada la investigación, el Administrador del Fondo emitió una decisión, notificada el 7 de junio de 1985, y resolvió que Concept, al momento de ocurrir el accidente alegado por la lesionada, era un patrono no asegurado. En dicha decisión, el Administrador nada dispuso o resolvió sobre las alegaciones del supervisor de Concept, mediante las cuales negaba la responsabilidad de esa compañía en relación con el accidente sufrido por Santiago.

Inconforme con la referida decisión del Administrador del Fondo, Concept presentó oportunamente, el 3 de julio de 1985, una apelación ante la Comisión Industrial (en adelante Comisión). En el referido recurso, cuestionó, en esencia, la decisión del Fondo relativa a su condición de patrono no asegurado.[1]

Estando pendiente la referida apelación de Concept ante la Comisión, Santiago, luego de recibir tratamiento médico por el Fondo, fue dada de alta definitiva el 30 de marzo de 1986. Mediante una decisión, notificada a todas las partes el 18 de julio de 1986, el Administrador del Fondo resolvió que el accidente sufrido por la lesionada era uno de los cubiertos por la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.* (en adelante Ley) y le reconoció una incapacidad equivalente a la pérdida de un cuarenta por ciento (40%) de las funciones fisiológicas generales, a consecuencia de la condición de asma bronquial crónica. Entonces Santiago, inconforme con el por ciento de incapacidad otorgada por el Fondo, acudió a su vez en apelación a la Comisión.

El 22 de marzo de 1987, en atención a la apelación de

---

[1] En el último inciso de su apelación, sin mayor explicación, el patrono también solicitó "que se ordene al F.S.E. a que se abstenga de cargarle a la póliza del patrono-peticionario los gastos incurridos en los casos de referencia".

Santiago, la Comisión celebró una vista médica. La celebración de esta vista no le fue notificada a Concept. Evaluada la prueba recibida durante la vista médica, la Comisión decidió aumentar la incapacidad ya otorgada a Santiago a un sesenta por ciento (60%) de las funciones fisiológicas generales. Esta determinación tampoco fue notificada a Concept.

Inconforme nuevamente con la decisión de la Comisión, Santiago solicitó que, de acuerdo con lo dispuesto en el Art. 10 de la Ley, 11 L.P.R.A. sec. 11, se celebrara una vista pública. El 26 de octubre de 1987, la Comisión celebró la vista pública sobre incapacidad y, a base de la prueba allí recibida, emitió una nueva determinación, aumentando a un cien por ciento (100%) el grado de incapacidad de Santiago. En esta ocasión, Concept tampoco fue citada a la vista ni fue notificada de la decisión emitida por la Comisión.

El 19 de abril de 1988, y en atención a la apelación interpuesta por Concept en 1985, la Comisión celebró una vista pública en relación con la determinación de patrono no asegurado hecha por el Fondo. En dicha vista compareció Concept, aceptó que era patrono no asegurado y negó afirmativamente la responsabilidad por el accidente en el caso de marras. Además, alegó la violación al debido proceso de ley por parte de la Comisión y del Fondo, al éstos no haberle notificado las evaluaciones y los tratamientos médicos a la lesionada, la decisión sobre alta con incapacidad ni los señalamientos y las resoluciones de la vista médica y de la vista pública sobre incapacidad.

Evaluada la prueba y los alegatos presentados por las partes durante la referida vista pública, la Comisión emitió una resolución, notificada el 30 de septiembre de 1988, mediante la cual confirmó la determinación del Fondo sobre patrono no asegurado. También ordenó al Fondo a pa-

ralizar los pagos a la lesionada, hasta tanto fuera dirimida la cuestión de responsabilidad por el accidente.

El 12 de junio de 1991 se celebró una vista pública sobre la cuestión aludida. El 17 de enero de 1995, la Comisión notificó una resolución mediante la cual concluyó que a Concept se le había violado su derecho a un debido proceso de ley, al no haber sido notificado de la celebración de las vistas sobre incapacidad y sus respectivas resoluciones. A consecuencia de ello, resolvió dejar sin efecto la resolución de vista médica, emitida el 22 de mayo de 1987, donde se aumentaba dicho por ciento a un cien por ciento (100%). Además, ordenó que se señalara otra vista pública para dilucidar nuevamente el asunto de la relación causal o responsabilidad por el accidente. La Comisión concluyó que la declaración de Carrillo Sepúlveda, supervisor de la lesionada, constituía una negación por parte de Concept de su responsabilidad por el accidente sucedido, por lo que el Fondo estaba obligado a referirle dicha controversia para adjudicarla, cosa que no había hecho desde un principio, dilatando así los procedimientos.

Inconforme con esta última resolución de la Comisión, Santiago recurrió a nos mediante un recurso de apelación, presentado el 14 de marzo de 1995, a tenor con lo dispuesto por el ya derogado Art. 3.002(d) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(d)). En su escrito, la apelante alegó que:

1. Erró la Comisión Industrial al considerar el aspecto de responsabilidad de accidente levantado por primera vez por el patrono en la vista pública del 19 de abril de 1988.
2. Erró la Comisión Industrial al declarar sin lugar unas incapacidades que fueron concedidas en forma final el 26 de octubre de 1987, o sea, siete (7) años después.

Evaluados los autos y sometidos los alegatos de las partes, procedemos a resolver.

## II

En su primer señalamiento de error, la apelante cuestiona la facultad de la Comisión para dilucidar, en la etapa del procedimiento cuando lo hizo, el asunto de la responsabilidad del patrono por el accidente. La apelante cuestiona la determinación de la Comisión de que la declaración jurada del supervisor de Concept constituyó una negación por parte de Concept de su responsabilidad por el accidente. En consecuencia, alega que en las etapas iniciales del procedimiento, el apelado nunca negó su responsabilidad por el accidente y sólo vino a hacerlo en la vista ante la Comisión sobre patrono no asegurado, o sea, tres años después que el Administrador del Fondo emitiera su decisión sobre ese particular. Según la apelante, el que Concept haya esperado a una etapa avanzada en el procedimiento para negar su responsabilidad por el accidente en este caso, constituyó una tardanza injustificada, y su falta de diligencia debió entenderse como una renuncia a dicho planteamiento. Aduce que siendo éste un caso claro de incuria, la Comisión debió haberse negado a asumir jurisdicción en cuanto a la controversia sobre responsabilidad del accidente.

No tiene razón la apelante.

█ El Art. 15 de la Ley, 11 L.P.R.A. sec. 16, dispone que en aquellos casos en que el patrono haya sido declarado como no asegurado por el Administrador del Fondo, "si el patrono no aceptare responsabilidad del accidente, el casó será elevado por el Administrador a la Comisión Industrial, la que decidirá la controversia". Conforme lo claramente dispuesto por el referido artículo, la jurisdicción original para adjudicar la responsabilidad por accidentes en casos de patrono no asegurado, en el proceso administrativo, recae *exclusivamente* en la Comisión Industrial. En estos casos, las partes son el patrono y el obrero, limitándose el Fondo, una vez negada la responsabilidad, a referir

el caso a la Comisión para adjudicación en primera instancia. Véase A.J. Matos, *Los Accidentes del Trabajo*, San Juan, Ed. Baldrich, 1945, pág. 143. Véase, además, *Vélez Sánchez v. Comisión Industrial*, 107 D.P.R. 797 (1978).

 Examinadas las disposiciones de la Ley aplicables en el caso de autos, resulta evidente que éstas no establecen término alguno para que el patrono no asegurado niegue la responsabilidad por el accidente, o para que el Fondo refiera el asunto a la Comisión. En vista de ello, nuestra función revisora se limita a determinar si la Comisión actuó de forma razonable y no arbitraria al entender cuando lo hizo en la controversia sobre responsabilidad por el accidente. Aplica, pues, aquí la conocida norma de que las interpretaciones que las agencias hagan de sus propias facultades merecen gran deferencia si son razonables y compatibles con sus propósitos legislativos.[2] *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992); *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991). Véanse, además: *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Tormos & D.A.C.O. v. F.R. Technology*, 116 D.P.R. 153 (1985).

 Examinados los hechos particulares del caso de autos, resolvemos que las determinaciones de la Comisión, primero, de que Concept había negado la responsabilidad por el accidente desde el mismo comienzo del procedimiento administrativo, a través de la declaración jurada de su supervisor, y segundo, de que, por lo tanto, tenía jurisdicción sobre esta controversia, fueron razonables y no arbitrarias. Una lectura de la referida declaración jurada demuestra que el supervisor, al cuestionar claramente el

---

[2] Debido a que es a la Comisión Industrial a la que la Ley del Sistema de Compensaciones por Accidentes del Trabajo (en adelante la Ley) le reconoce jurisdicción original sobre la controversia de responsabilidad de accidente, es ésta la que se merece nuestra deferencia y no el Fondo del Seguro del Estado (en adelante el Fondo), como parece sugerir la apelante.

nexo causal entre las operaciones en la fábrica de Concept y la condición asmática de la apelante, indudablemente estaba negando la responsabilidad del patrono por el accidente, y notificándoselo así al Fondo, a través del funcionario de dicha agencia ante el cual se hizo tal declaración. Como no existe, según ya hemos señalado, en la ley o reglamento requisito formal alguno que tenga que seguir un patrono para negar su responsabilidad por accidentes, no estamos en posición de revocar a la Comisión en cuanto a su razonable apreciación de la naturaleza y el efecto de la declaración sobre el particular prestada por el supervisor de Concept.[3]

En cuanto a la dilación en adjudicar la controversia sobre la responsabilidad por el accidente, ocurrida en este caso, tampoco resulta irrazonable la conclusión de la Comisión de que dicha dilación se debió al incumplimiento por parte del Fondo, al no referirle el caso oportunamente, se-

---

[3] La apelante parece alegar que los términos y el procedimiento que ha de seguirse en la adjudicación de responsabilidad de accidente son los mismos que requiere la Ley para la adjudicación de la controversia sobre patrono no asegurado. No le asiste la razón.

No hay duda de que existe relación entre la controversia sobre *status* patronal y la de responsabilidad por un accidente. El que el patrono pueda cuestionar su responsabilidad por el accidente depende de que se le haya declarado no asegurado. Al contrario, el patrono asegurado, estando cobijado por la inmunidad que le reconoce la Ley, no tiene capacidad jurídica para cuestionar ante la Comisión Industrial su responsabilidad por el accidente. *Alonso García v. Comisión Industrial*, 103 D.P.R. 881 (1975).

No obstante la relación antes explicada, la Ley claramente diferencia ambas controversias. En cuanto a la de *status* patronal, el Fondo tiene jurisdicción original para determinar si un patrono está asegurado. Si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial, según el procedimiento establecido en el Art. 10 de la Ley, 11 L.P.R.A. sec. 11. En el procedimiento apelativo ante la Comisión Industrial, las partes son el patrono y el Fondo. Al contrario, la controversia sobre responsabilidad por un accidente de un patrono no asegurado es resuelta, en primera instancia, por la Comisión Industrial, según lo dispuesto por el Art. 15 (11 L.P.R.A. sec. 16), siendo inoficiosa cualquier determinación que haga el Fondo al respecto, y las partes son el obrero lesionado y el patrono. Ambos procedimientos se adjudican por separado, resolviéndose primeramente, si es necesario, la controversia sobre *status* patronal y luego, si también es necesario, la de responsabilidad por el accidente.

Las claras diferencias que la Ley establece entre ambas controversias nos impiden que, por fíat judicial, apliquemos por analogía el esquema adjudicativo de una a la otra.

gún lo establece el Art. 15 de la Ley, *supra*, y no a la falta de diligencia del patrono. Como la declaración jurada del supervisor de Concept había sido tomada por un funcionario del Fondo, y obraba en el expediente de dicha agencia, es razonable que se le imputara a ésta que conocía o debió haber conocido que el patrono estaba negando su responsabilidad en este caso.[4] El Fondo, pues, una vez determinó que Concept era un patrono no asegurado, estaba obligado estatutariamente a referirle el caso a la Comisión, para que ésta notificara a su vez a la empleada que debía someter un informe sobre el accidente, y así poder adjudicar la controversia entre ésta y el patrono. El incumplimiento del Fondo de su función estatutaria en este caso, por lo tanto, retrasó el que la Comisión adviniera en conocimiento de la controversia sobre responsabilidad por el accidente, y fue lo que demoró que la Comisión la resolviera expeditamente, salvaguardando los derechos de ambas partes. Permitir que las fallas burocráticas en el Fondo en el presente caso priven a la Comisión de la jurisdicción original que la Ley le reconoce, trastocaría inaceptablemente el esquema adjudicativo antes descrito y la política pública que éste entraña.

■ El primer señalamiento de error no fue cometido.[5]

---

[4] Incluso, las guías preparadas por el Fondo para sus oficiales investigadores señalan que uno de los aspectos que ha de cubrirse durante la investigación en casos de patrono no asegurado es el de la ocurrencia del accidente, y dispone que si el patrono la negase se le solicitará que explique por qué lo hace. Guías sobre el Proceso Adjudicativo por Tipo de Caso, Fondo del Seguro del Estado, 1976, pág. 2.

[5] No estamos resolviendo que cualquier declaración que haga un patrono —durante el procedimiento administrativo ante el Fondo— que trate de alguna forma sobre su responsabilidad por un accidente, sea suficiente para obligar al Fondo a referir el caso a la Comisión. En el caso ante nos es determinante que la declaración aludida fue clara, libre de ambigüedades y, más aún, que fue prestada ante un funcionario del Fondo. Tampoco resolvemos que un patrono pueda esperar el tiempo que quiera mientras la cuestión sobre *status* patronal se encuentre sub júdice ante la Comisión para negar su responsabilidad por el accidente. En ambos casos aplicamos aquí un criterio de razonabilidad, que es el que debe regir en ausencia de disposiciones estatutarias sobre el particular.

## · III

En el segundo señalamiento de error, la parte apelante sostiene que la Comisión abusó de su discreción al dejar sin efecto dos resoluciones previas en torno al aumento de incapacidad a la apelante, solo por el hecho de no haberse notificado al patrono la celebración de las vistas y sus posteriores decisiones. No le asiste la razón a la parte apelante.

■ El Art. 15 de la Ley, *supra*, dispone en lo aquí pertinente lo siguiente:

> ... la Comisión Industrial dará, tanto a patrono como al obrero o empleado, en el caso, oportunidad de ser oídos y defenderse, ajustándose en lo posible a las prácticas observadas en el Tribunal Superior; y disponiéndose, también que citadas las partes por el medio que la Comisión adopte, si éstas o cualquiera de ellas no concurriese para ser oídas y defenderse, se entenderá que éstas renuncian a su derecho y la Comisión Industrial podrá fallar el caso en rebeldía sin más demora.

En *Marrero Bermúdez v. Comisión Industrial*, 107 D.P.R. 777, 781 (1978), este Tribunal expresó lo siguiente:

> El debido proceso de ley se cumple, por tanto, dando audiencia al patrono para que pueda defenderse de una decisión que por disposición del estatuto habrá de constituir un gravamen *(lien)* sobre toda su propiedad y que le expondrá a una ejecución sumaria. La propia Ley instruye que se dé al patrono oportunidad de ser oído y defenderse. La decisión parcial de la Comisión, tiene el efecto de privación de propiedad del patrono ... sin el debido proceso de ley.

■ Conforme lo antes citado, es claro que un patrono declarado como no asegurado tiene derecho a las garantías constitucionales mínimas y básicas del debido proceso de ley, que ofrecen tanto la Constitución de Estados Unidos como la del Estado Libre Asociado de Puerto Rico.

En el presente caso surge del expediente administrativo, y en específico de la resolución emitida por la Comisión, que Concept no fue notificado del señalamiento de la vista médica celebrada el 22 de mayo de 1987 ni de la resolución emitida posteriormente y notificada el 1ro de junio de 1987, y de su resolución, notificada el 25 de enero de 1988, la cual tuvo el efecto de aumentar la incapacidad otorgada a la lesionada o a un cien por ciento (100%) de las funciones fisiológicas generales.

■ El hecho de no haberse notificado al patrono sobre las vistas celebradas, a pesar de que del expediente ante la Comisión surgía que se le había declarado patrono no asegurado y, por lo tanto, era parte en el proceso para adjudicar el por ciento de incapacidad, constituyó una violación a lo dispuesto por el antes citado Art. 15 de la Ley al debido proceso de ley; error que la Comisión, mediante la resolución aquí recurrida, rectificó. Tampoco, pues, se cometió el segundo señalamiento de error.

Por los fundamentos antes expresados, *se dictará sentencia para confirmar la resolución de la Comisión de 17 de enero de 1995 en el caso de autos.*

Los Jueces Asociados Señores Negrón García y Hernández Denton no intervinieron.