EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nieves Dairy Farm<br>     Peticionario<br><br>          v.<br><br>  Corporación del Fondo del<br>  Seguro del Estado, et als.<br>          Recurrida | Certiorari<br><br>2004 TSPR 155<br><br>162 DPR _____ |

Número del Caso: CC-2002-168

Fecha: 24 de septiembre de 2004

Tribunal de Circuito de Apelaciones:

                  Circuito Regional de San Juan

Juez Ponente:
                  Hon. José M. Aponte Jiménez

Abogados de la Parte Peticionaria:

                  Lcdo. José J. Santiago Meléndez
                  Lcdo. Carlos A. Padilla Velez

Abogada de la Parte Recurrida:

                  Lcda. Ana M. Pérez Nieves

Materia: Revisión procedente de la Comisión Industrial de Puerto Rico

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nieves Dairy Farm

      Peticionario

         v.

Corporación del Fondo del
Seguro del Estado, et als

      Recurrida

Certiorari

CC-2002-168

PER CURIAM

En San Juan, Puerto Rico, a 24 de septiembre de 2004.

El obrero Enrique Morales Calo alegadamente sufrió un accidente el 7 de junio de 1988, mientras realizaba labores para su patrono, el aquí peticionario, Nieves Dairy Farm (Nieves Dairy). El 8 de agosto de 1988, el Fondo del Seguro del Estado (el Fondo) declaró a Nieves Dairy patrono no asegurado para ese periodo. Basó su determinación en que Nieves Dairy no había pagado la totalidad de las primas correspondientes al segundo semestre del año 87-88, adeudando la cantidad de $75.80 al momento de expirar el término para su pago. Nieves Dairy no apeló de esta decisión ante la Comisión Industrial.

Casi un año después, el 2 de agosto de 1990, el Fondo expidió una factura al cobro reclamándole a Nieves Dairy la cantidad de $2,031.25 para cubrir la compensación por incapacidad y los gastos médicos de Morales Calo. El 22 de agosto de 1990, Nieves Dairy acudió a la Comisión Industrial e invocó la jurisdicción original de esa agencia, al amparo del artículo 13 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA sec. 16.[1] (en adelante, la Ley). Planteó, entre otras cosas, que el Fondo nunca le notificó su decisión de declararlo patrono no asegurado y que a la fecha del accidente estaba al día en el pago de las primas. Posteriormente, solicitó a la Comisión que lo declarara patrono asegurado mediante "Resolución Sumaria" y que reconociera que la deficiencia en las primas correspondientes a 1987-88 fue pagada mediante compensación con un crédito que tenía a su favor, por concepto de primas pagadas en exceso al Fondo durante los años fiscales 1984-85 y 1985-86. Dicho crédito ascendía a $3,206.08.

Pendiente aún la solicitud de "resolución sumaria", Nieves Dairy solicitó a la Comisión que paralizara los procedimientos, mientras este Tribunal resolvía una controversia idéntica en el caso de <u>Luis Morales Calo y</u>

---

[1] La Ley Núm. 63 de 1 de julio de 1996 renumeró los artículos de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Las partes, la Comisión Industrial y el Tribunal de Circuito de Apelaciones utilizan la numeración original. Para evitar confusión, utilizaremos la numeración vigente, advirtiendo, sin embargo, que en virtud de la Ley Núm. 63, supra, el artículo 10 se convirtió en el 9 y el artículo 15 en el 13 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.

<u>Modesto Morales Calo v. Nieves Dairy Farm, Inc.</u>, CE-90-892.
El 10 de octubre de 1991 la Comisión ordenó a las partes
presentar memorandos de derecho sobre la posibilidad de
jurisdicción simultánea entre el Tribunal Supremo y la
Comisión Industrial. No consta en autos que hubiese emitido
resolución posterior alguna al respecto.

Sin embargo, más de seis años después, el 10 de marzo
de 1998, Nieves Dairy solicitó a la Comisión que tomara
conocimiento oficial de la sentencia dictada por este
Tribunal, en el caso de <u>Luis Morales Calo y Modesto Morales
Calo v. Nieves Dairy Farm, Inc.</u>, supra, notificada el 3 de
marzo de ese año. En dicha sentencia, resolvimos que Nieves
Dairy era patrono asegurado para el segundo semestre del año
1988-1989, en virtud de compensación de primas al
descubierto por primas pagadas en exceso.

Apoyado en esa decisión, Nieves Dairy solicitó a la
Comisión que revocara la resolución emitida por el Fondo el
8 de agosto de 1989 declarándolo patrono no asegurado para
el segundo semestre 1987-88. La Comisión así lo hizo,
mediante resolución notificada el 29 de agosto del 2000.
Determinó que a la fecha del accidente Nieves Dairy mantenía
en vigor su póliza en el Fondo, en virtud de la compensación
de los créditos por pagos en exceso, por lo cual era un
patrono asegurado.

El Fondo solicitó reconsideración. Argumentó que la
Comisión no tenía jurisdicción para alterar la determinación
del Fondo sobre *status* patronal, porque Nieves Dairy no
había apelado dentro los 30 días siguientes

a dicha determinación, según dispone el artículo 9 de la Ley de Compensaciones por Accidentes del Trabajo, 11 LPRA 11. La Comisión entonces acogió la posición del Fondo, en resolución emitida el 13 de diciembre del 2000 y dejó sin efecto su dictamen anterior.  Se declaró sin jurisdicción para revisar la decisión del Fondo en cuanto a *status* patronal y dejó pendiente para dilucidar en el futuro la responsabilidad por el accidente y la factura de cobro. La solicitud de reconsideración presentada por Nieves Dairy fue denegada.

Ante el entonces Tribunal de Circuito de Apelaciones, Nieves Dairy solicitó la revisión de este dictamen. Basándose en su interpretación de la jurisprudencia prevaleciente al 25 de agosto de 1989, cuando presentó su petición original, sostuvo que la Comisión podía resolver controversias sobre *status* patronal, cuando el patrono no asegurado niega responsabilidad por el accidente al amparo del artículo 13 de la Ley, supra. Según alegó ante el foro apelativo intermedio, el recurso de apelación ante la Comisión que provee el artículo 9 de la Ley, supra, no era el único modo a su alcance para lograr la revocación de la determinación del Fondo sobre su condición de patrono no asegurado. Apoyó su interpretación en la Opinión de este Tribunal en Declet v. Comisión Industrial, 62 DPR 903 (1944).

Según Nieves, fue nuestra decisión en Santiago Mitchell v. F.S.E., 141 DPR 388 (1996) la que alteró el estado de derecho alegadamente establecido en Declet, supra, al

comentarse, en nota al calce, que la determinación del Fondo sobre *status* patronal debe ser apelada a la Comisión siguiendo el procedimiento pautado por el artículo 9 de la Ley, aun cuando el patrono haya negado responsabilidad por el accidente. Sin embargo, como el presente caso surge a partir de unos hechos anteriores a nuestra decisión en Santiago Mitchell, supra, Nieves Dairy planteó que no se le debía aplicar la "nueva" doctrina.

El Tribunal de Apelaciones denegó la expedición del auto de revisión. Resolvió que el procedimiento disponible al patrono para revisar una determinación del Fondo que lo declara patrono no asegurado es el que está estatuido en el artículo 9 de la Ley, supra. Éste establece un término de carácter jurisdiccional de 30 días para acudir ante la Comisión Industrial. Resolvió asimismo que el procedimiento dispuesto por el artículo 13 de la Ley, supra, para cuando un patrono no asegurado niega responsabilidad por el accidente, no otorga jurisdicción original a la Comisión para ventilar controversias sobre *status* patronal. Específicamente, el foro apelativo rechazó la aplicación de nuestro dictamen en el caso de Declet, supra, a los hechos del presente caso, en tanto y en cuanto aquél realmente se refiere a la facultad de la Comisión Industrial para determinar, no si el patrono está asegurado, sino si es, en efecto, patrono del obrero lesionado.

Nieves Dairy presentó solicitud de certiorari el 1 de marzo de 2002, luego de lo cual ordenamos al Fondo mostrar causa por la cual no debíamos expedir el auto solicitado.

Con el beneficio de la comparecencia de las partes, pasamos a resolver.

I

Ante este Tribunal, Nieves Dairy alega que el Tribunal de Apelaciones erró: "...al negarse a aplicar la figura de compensación y en vista de los créditos existentes a favor del patrono ante el Fondo del Seguro del Estado, declararlo patrono asegurado..." y, " al concluir que la Comisión Industrial carecía de jurisdicción original para entender en la controversia presentada por Nieves Dairy, tras advenir en conocimiento de que el Fondo lo había declarado patrono no asegurado y haber negado responsabilidad por el accidente".

Resulta evidente de los hechos que hemos relatado que este caso nos requiere resolver, como cuestión de umbral, si un patrono que no cuestiona ante la Comisión Industrial la determinación del Fondo del Seguro del Estado declarándolo patrono no asegurado puede hacerlo luego, durante el juicio *de novo* sobre responsabilidad por el accidente, incoado ante la Comisión al amparo del artículo 13 de la Ley, 11 LPRA sec. 16.

Es sólo si resolvemos en la afirmativa, que nos correspondería entonces determinar si la deuda por razón de primas no efectuadas fue extinguida por compensación con el crédito que el peticionario Nieves Dairy Farm tenía a su favor ante el Fondo por primas pagadas en exceso en años

anteriores, convirtiéndolo así en patrono asegurado a la fecha del accidente laboral que da inicio a este caso.

## II

La política pública en la que se basa la regulación de las relaciones obrero-patronales cuando sucede un accidente del trabajo se encuentra en el artículo 1(a) de la Ley de Compensaciones por Accidentes del Trabajo, 11 LPRA sec. 1 a. Según esta disposición:

> La Constitución del Estado Libre Asociado de Puerto Rico en su Carta de Derechos, Artículo II, Sec. 16, prec. al Título 1, reconoce el derecho de todo trabajador de estar protegido contra riesgos a su salud en su trabajo o empleo... Por tal razón, la Asamblea Legislativa reconoce el principio de que el riesgo de sufrir accidentes del trabajo es uno de tipo fundamental que necesariamente requiere acción gubernamental. [Esta acción gubernamental y social en el cual] [l]os trabajadores ceden en cierta medida su derecho a demandar a su patrono a cambio de un beneficio que puede eventualmente resultar menor, pero que es uno seguro, inmediato y cierto. Para que el contrato social resulte favorable a los mejores intereses del trabajador, es el propósito de la Asamblea Legislativa que se brinde a los empleados dentro del Sistema la mejor y más amplia protección contra los riesgos del empleo. Para lograr la decidida colaboración de los patronos en la prestación de esta protección máxima dentro del Sistema, es necesario se reduzcan a un mínimo los pleitos costosos fuera de éste, en reconocimiento al principio que sirve de base al contrato de que los beneficios que provee internamente el Sistema constituyen el sustituto económico del remedio legal.

Es dentro de este marco de contrato social que se establece un sistema compulsorio de aportación patronal a un fondo estatal de seguro que tiene el fin de compensar a

los empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en el curso de sus labores. Martínez v. Bristol Myers, 147 DPR 6 (1999).

A ese fin, el artículo 16 de la Ley, 11 LPRA sec. 19, dispone lo siguiente:

> Todo patrono de los comprendidos dentro de las disposiciones de este capítulo estará obligado a asegurar a sus obreros o empleados en el Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte....

A su vez, el artículo 25 de la misma ley, 11 LPRA sec. 28, establece que:

> Será deber de todo patrono el presentar al Administrador, no más tarde del día 20 de julio de cada año, un estado expresando el número de los trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior.... Sobre la suma total de jornales declarados en ese estado será computada la cuota ... a pagar por el patrono....

El patrono que no cumpla con esta obligación dentro del término dispuesto por la Ley será considerado como un patrono no asegurado. López v. F.S.E., 146 DPR 778 (1998). Esta determinación tiene efectos que repercuten tanto en los empleados como en los propios patronos. Por un lado, el artículo 2 de la Ley, 11 LPRA sec. 2, establece que los obreros y empleados que trabajan para patronos asegurados están protegidos por la Ley y son acreedores a los remedios compensatorios provistos por ésta en caso de sufrir lesiones, inutilizarse o perder la vida por accidentes ocasionados en el curso de su trabajo. Por otro lado, la Ley otorga al patrono asegurado inmunidad frente a acciones

civiles de daños y perjuicios que pudieran presentar en su contra los empleados lesionados, independientemente de que haya mediado negligencia patronal. Es decir, la Ley priva de esas causas de acción a los empleados cuando el patrono ha cumplido con su obligación legal de asegurar a sus trabajadores ante el Fondo. Martínez v. Bristol Myers, supra.

En sentido contrario, la ley dispone que el patrono no asegurado, es decir, aquél que incumple el deber legal de asegurar a sus trabajadores, no gozará de inmunidad frente a las acciones en daños y perjuicios que sus empleados presenten en su contra. Así se desprende del artículo 18 de la Ley, 11 LPRA 21, que dispone como sigue:

> Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, ... pero en en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiere el presente capítulo.

A su vez, el artículo 13 de la Ley, 11 LPRA 16, provee que cuando el patrono no asegurado niega responsabilidad por el accidente, "cualquier obrero o empleado perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial y, además, pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si este capítulo no fuera aplicable."

Ahora bien, el artículo 13 también dispone que cuando el patrono declarado no asegurado por el Fondo no acepte responsabilidad por el accidente: "el caso será elevado por el Administrador a la Comisión Industrial, la que decidirá la controversia". Conforme a lo anterior, hemos resuelto que "la jurisdicción original para adjudicar la responsabilidad por accidentes en casos de patrono no asegurado, en el proceso administrativo, recae exclusivamente en la Comisión Industrial. En estos casos, las partes son el patrono y el obrero, limitándose el Fondo, una vez negada la responsabilidad, a referir el caso a la Comisión Industrial para adjudicación en primera instancia". Santiago Mitchell v. F.S.E., supra, a la pág. 5. 394-95.

Por otro lado, la Ley específicamente concede al Fondo la jurisdicción **original** para determinar **si un patrono está o no asegurado**, o lo que es lo mismo, para determinar el *status* patronal. Eventualmente, si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial. A esos efectos, el artículo 9 de la Ley, supra, se expresa en los siguientes términos:

> Si el obrero o empleado, o sus beneficiarios, no estuvieran conformes con la decisión dictada por el Administrador de la Corporación del Fondo del Estado con relación a su caso, podrán apelar ante la Comisión Industrial dentro de un término de treinta (30) días después de haber sido notificados con copia de la decisión del Administrador y el caso se señalará para ser oído por un Comisionado. En los casos de patronos no asegurados tanto el obrero como el patrono podrá acudir a la Comisión Industrial una vez declarado

no asegurado el patrono por el Administrador, **teniendo el patrono un término de 30 días para apelar de la decisión del Administrador declarándolo no asegurado y el caso podrá ser visto por un Comisionado de la Comisión Industrial.** (Énfasis nuestro).

En más de una ocasión hemos aludido a la naturaleza jurisdiccional de este término y a la naturaleza exclusiva del proceso de apelación ante la Comisión para solicitar la revisión de una determinación del Fondo sobre *status* patronal. Así, en <u>Franco v. J. Pérez & Cía, Inc. y F.S.E.</u>, 126 DPR 349 (1990), reconocimos, mediante sentencia, que el término dispuesto por el artículo 9, supra, es jurisdiccional. En voto particular y de conformidad el Juez Asociado señor Alonso Alonso, a la pág. 361, puntualizó lo siguiente:

> El carácter jurisdiccional de este término surge del lenguaje utilizado por el legislador en el estatuto. La disposición establece que tiene "el patrono un término de treinta (30) días para apelar...". Ante un lenguaje tan claro no puede interpretarse de otra forma que no sea la de un deber afirmativo cuyo incumplimiento extingue el derecho.

En <u>Santiago Mitchell v. F.S.E.</u>, supra, distinguimos entre los procedimientos establecidos en los artículos 9 y 13 de la Ley, supra. Según expresamos allí, en la nota al calce número 3, pág. 396:

> No hay duda de que existe relación entre la controversia sobre *status* patronal y la de responsabilidad por un accidente. El que el patrono pueda cuestionar su responsabilidad por el accidente depende de que se le haya declarado no asegurado. Al contrario, el patrono asegurado, estando cobijado por la inmunidad que le reconoce la ley, no tiene capacidad jurídica para cuestionar ante la Comisión Industrial su

responsabilidad por el accidente.  <u>Alonso García v. Comisión Industrial</u>, 103 DPR 881 (1975).

No obstante la relación antes explicada, la ley claramente diferencia ambas controversias.  En cuanto a la de *status* patronal, el Fondo tiene jurisdicción original para determinar si un patrono está asegurado,  Si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial, según el procedimiento establecido en el art. 10 de la ley, 11 LPRA sec. 11.  En el procedimiento apelativo ante la Comisión Industrial, las partes son el patrono y el Fondo.  Al contrario, la controversia sobre responsabilidad por un accidente de un patrono no asegurado es resuelta, en primera instancia, por la Comisión Industrial, según lo dispuesto por el art. 15 (11 LPRA sec. 16) siendo inoficiosa cualquier determinación que haga el Fondo al respecto y las partes son el obrero lesionado y el patrono.  Ambos procedimientos se adjudican por separado, resolviéndose primeramente, si es necesario, la controversia sobre el *status* patronal y luego, si también es necesario, la responsabilidad por el accidente.

Las claras diferencias que la ley establece entre ambas controversias nos impiden que, por *fiat* judicial, apliquemos por analogía el esquema adjudicativo de una a la otra.

Finalmente, en <u>Kelly Temporary Services v. F.S.E.</u>, 142 DPR 290 (1997), al examinar si las gestiones de un patrono ante el Fondo constituían la moción de reconsideración que podía interrumpir el término para recurrir ante la Comisión Industrial, este Tribunal reiteró que el término dispuesto en el artículo 9 para apelar de la determinación del Fondo es jurisdiccional.  Dijimos entonces lo siguiente: "Por lo tanto, una vez comienza dicho término a decursar y finaliza, sin que se haya presentado oportunamente alguna moción interruptora, se extingue el derecho a apelar y la

facultad del organismo revisor para intervenir." Id., pag. 299.

Además, en las notas al calce número 3 y 5 de ese mismo caso, págs. 300-301, abordamos el alcance de la jurisdicción original de la Comisión bajo el artículo 13 de la Ley y las alternativas que tiene el patrono que es declarado no asegurado por el Fondo. Hicimos entonces la siguiente explicación:

> Es correcta la determinación de la Comisión en cuanto a que la jurisdicción original provista en dicho artículo se circunscribe únicamente a la responsabilidad por el accidente, de lo cual este caso no trata. Del antes citado art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRFA sec. 11, surge claramente que es el Fondo del Seguro del Estado (en adelante Fondo) el que determina en primera instancia el *status* patronal, después de lo cual el patrono puede acudir en apelación a la Comisión, quien podrá entonces revisar la decisión del Fondo.
>
> ...
>
> Surge claramente de lo antes citado que cuando un patrono es declarado no asegurado por el Fondo, aquél tiene reglamentariamente dos opciones inmediatas: someter evidencia adicional al Fondo para que éste reconsidere y revoque su decisión previa, o puede acudir directamente a la Comisión para que ésta revise la decisión del Fondo.

Nieves Dairy aduce que los pronunciamientos en Santiago Mitchell, supra, establecieron por primera vez que el remedio provisto por el artículo 9 de la Ley, supra, era el mecanismo exclusivo para que la Comisión adquiriera jurisdicción para revisar las determinaciones del Fondo sobre *status* patronal. Alega que su efecto debe ser prospectivo, pues hasta ese momento regía un estado de

derecho diferente, alegadamente establecido en Declet v. Comisión Industrial, supra. No tiene razón.

La controversia que resolvimos en Declet no guarda relación con la que nos ocupa en el presente caso. Allí el patrono no asegurado alegó que no era patrono del obrero accidentado. No cuestionó la determinación de *status* patronal, sino su condición de patrono frente al obrero reclamante. No erró el foro apelativo al aclarar esta distinción. Por otra parte, ni nuestra decisión en Kelly, supra, ni la explicación anterior en Santiago Mitchell, supra, cambiaron la situación normativa, sino que expusieron el estado de derecho existente.

Por último, Nieves Dairy sostuvo ante la Comisión Industrial y alegó en su petición de certiorari que nunca recibió notificación de la decisión del Fondo declarándolo patrono no asegurado. Adujo que el único documento que recibió fue la factura al cobro emitida por el Fondo el 2 de agosto de 1990.

Sin embargo, en su escrito mostrando causa, el Fondo indica que la decisión fue notificada a Nieves Dairy por correo certificado el 8 de agosto de 1989 y que se sometió ante la Comisión la certificación del Secretario del Fondo a esos efectos, así como la tarjeta de acuse de recibo del Correo de los Estados Unidos. Incluyó copia de todo lo anterior. Según hemos constatado, el acuse de recibo evidencia que la notificación se recibió el 15 de agosto de 1989 por Paquita A. de Nieves, quien según la resolución de

la Comisión fechada 11 de septiembre de 1991, era una funcionaria de la corporación Nieves Dairy Farm, Inc.

Lo anterior nos lleva a concluir que Nieves Dairy fue notificado oportunamente de la determinación del Fondo declarándolo patrono no asegurado y optó por no solicitar reconsideración ante el Fondo ni revisión ante la Comisión Industrial, hasta que recibió la factura al cobro por el tratamiento brindado al obrero lesionado. Transcurrido casi un año desde la resolución del Fondo y su notificación, intenta impugnar la determinación del Fondo invocando la jurisdicción original de la Comisión, dado que el transcurso del tiempo no le permitía invocar la jurisdicción apelativa de esa agencia.

Sin embargo, según hemos explicado, al no acudir dentro del término dispuesto para apelar, la Comisión perdió jurisdicción para entender en la controversia sobre el *status* patronal de Nieves Dairy Farm, es decir, sobre si éste era o no un patrono asegurado. De esa forma, la inacción del peticionario también nos privó de jurisdicción para expresarnos en torno al segundo error planteado por el peticionario.[2]

---

[2] Según expusimos antes, Nieves Dairy adujo en su segundo señalamiento de error que la deuda por razón de primas no efectuadas se extinguió por compensación con el crédito que tenía a su favor por las primas pagadas en exceso en años anteriores. En <u>Morales Calo v. Nieves Dairy Farm</u>, supra, resolvimos esta controversia en la afirmativa. Señalamos allí que la compensación no burlaba la obligación del pago de primas ya que: "[e]n primer lugar, la compensación se da `ipso jure', ... aún sin que los interesados tengan conocimiento de ello y en segundo lugar, ello no violenta la política pública que inspira la Ley de Compensación por Accidentes en el Trabajo." Por otra parte, la obligación de reembolsar o acreditar los pagos en exceso opera como mandato *ex lege,* en virtud del artículo 24 de la Ley, que entre otras cosas establece que: "...si la nómina para el año durante el cual estuvo vigente el seguro fuera menor que la del año económico para el cual fueron tasadas, impuestas y recaudadas las cuotas, el Administrador del Fondo del Seguro del Estado <u>reembolsará o acreditará</u>, sin intereses o descuentos, ... la proporción de las cuotas correspondiente a la diferencia entre la nómina actual para el año durante el cual estuvo vigente el seguro y el año para el cual fueron tasadas, impuestas y recaudadas dichas cuotas, siempre y cuando que el Administrador pueda comprobar a su entera satisfacción que los jornales, sueldos y otras remuneraciones declaradas por el patrono

Por los fundamentos expuestos, resolvemos que no erró el Tribunal de Apelaciones al denegar el recurso de revisión en este caso.  Por consiguiente, se expide el auto de certiorari para confirmar la resolución recurrida.

Se dictará Sentencia de conformidad.

---

en el estado o informe que más adelante se provee, han sido correctamente consignados." 11 LPRA sec. 27.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Nieves Dairy Farm                                    Certiorari

    Peticionario

       v.

Corporación del Fondo del              CC-2002-168
Seguro del Estado, et als

    Recurrida




SENTENCIA


En San Juan, Puerto Rico, a 24 de septiembre de 2004.

Por los fundamentos expuestos anteriormente, los cuales se hacen formar parte integral de la presente, se confirma la decisión del Tribunal de Apelaciones y se deniega la solicitud de revisión administrativa presentada por Nieves Dairy Farm.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo