EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| David Lebrón Bonilla<br>    Demandante-apelado<br>    recurrente<br><br>              v.<br><br>Estado Libre Asociado de Puerto Rico,<br>Administración de Corrección<br>    Demandados-apelantes<br>     Recurridos | Certiorari<br><br>2001 TSPR 145<br><br>155 DPR ____ |

Número del Caso: CC-2000-181


Fecha: 30/octubre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Juez Ponente:
                        Hon. Germán J. Brau Ramírez

Abogada de la Parte Peticionaria:
                        Lcda. Noemí Caraballo López


Oficina del Procurador General:
                        Lcda. Rosana Márquez Valencia
                        Procuradora General Auxiliar


Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

David Lebrón Bonilla

    Demandante-apelado
recurrente

       vs.                  CC-2000-181      CERTIORARI

Estado Libre Asociado de
Puerto Rico, Administración
de Corrección

    Demandados-apelantes
recurridos

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de octubre de 2001

El 4 de agosto de 1986, el Sr. David Lebrón Bonilla inició sus labores, como Oficial Correccional I, en la Administración de Corrección. El 1 de noviembre de 1993, la Administración de Corrección ascendió al Sr. Lebrón Bonilla al puesto de Oficial Correccional II (Sargento), asignado a la Cárcel Regional de Bayamón, sujeto dicho ascenso a que éste aprobara el período probatorio de doce (12) meses, culminando dicho período el 31 de octubre de 1994. Las cinco evaluaciones efectuadas durante dicho período probatorio fueron a los efectos de que el

**trabajo realizado por el Sr. Lebrón Bonilla fluctuaba entre excelente y bueno.[1]**

**No obstante lo anterior y transcurridos cinco (5) meses desde el vencimiento del periodo probatorio, el Sr. Lebrón recibió una comunicación, con fecha del 3 de abril de 1995, suscrita por el Sr. Joseph Colón, Administrador de Corrección, en la cual se le informaba a éste que no había aprobado el período probatorio, acompañándose copia de una evaluación que no había sido discutida con el Sr. Lebrón, ni que éste firmó.**

**En la referida comunicación, se le indicó que sería descendido y reinstalado al puesto que ocupaba antes, de Oficial de Custodia I, y se le advirtió sobre su derecho a recurrir ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) dentro de los treinta (30) días contados a partir del recibo de la notificación de la misma. Además, el 23 de abril de 1994, se trasladó al Sr. Lebrón a un campamento penal, Campamento Zarzal, en Río Grande, donde ocupó un puesto de inferior categoría.[2]**

**Inconforme, el Sr. Lebrón Bonilla apeló ante J.A.S.A.P. el 10 de mayo de 1995, alegando que: la Administración de Corrección, de manera dañina, arbitraria y caprichosa, había ordenado su descenso, le había reducido el sueldo y lo había**

---

[1] El 22 de noviembre de 1994, luego de discutir y firmar su última evaluación, la cual fue excelente, el Supervisor inmediato del Sr. Lebrón Bonilla, el Sr. Fortunato Rivera Aponte, le entregó copia de la misma.

reinstalado en el puesto que ocupaba antes, violándose todas las disposiciones legales que rigen el Área de Evaluación del Sistema de Administración de Personal. Además, en dicha apelación, éste se reservó su derecho a demandar en daños y perjuicios ante los foros pertinentes, solicitando su restitución al puesto de Oficial Correccional II que ocupaba en Bayamón, además de todos los haberes dejados de percibir.

En abril del 1996, el Sr. Lebrón Bonilla radicó demanda por daños y perjuicios contra el Estado Libre Asociado, Joseph Colón, Administrador de Corrección, la Administración de Corrección, el Sr. Rafael López Ramos y Jane Doe y la Sociedad Legal de Gananciales por ellos compuesta y contra el Sr. Fortunato Rivera Aponte y Jane Doe y la sociedad legal de gananciales por ellos compuesta. Alegó, en síntesis, que éstos violaron su derecho constitucional al debido proceso de ley, al no proveer una vista administrativa antes de despojarlo de su puesto, y que de manera negligente, culposa y arbitraria, éstos firmaron una evaluación que causó, no sólo un descenso en el puesto que ocupaba, provocándole una reducción en su salario y un traslado a un lugar distinto al que trabajaba, sino que le causó daños emocionales, angustias mentales y sufrimientos que obligaron al mismo a recibir tratamiento profesional. En vista a ello, solicitó la suma

---

[2] Cabe señalar que no se celebró vista administrativa antes de tomar la referida acción.

de $1,936.00 en salarios dejados de percibir y $200,000.00 en daños, gastos médicos, angustias y sufrimientos mentales.[3]

En el entretanto, y mediante estipulación a esos efectos ante J.A.S.A.P., el 4 de mayo de 1996 la Administración de Corrección <u>acordó reinstalar</u> al Sr. Lebrón al puesto de Sargento, es decir, al puesto que ocupaba de Oficial Correccional II, en la Institución Correccional de Bayamón; también se acordó pagarle la diferencia en el salario dejado de percibir a partir de la fecha en que éste dejó de ocupar dicho puesto. La referida Administración <u>aceptó que en el proceso de evaluación del Sr. Lebrón Bonilla se había cometido una serie de irregularidades que hicieron que dicho proceso fuera nulo</u>.

En relación con la demanda de daños y perjuicios, el tribunal de primera instancia dictó sentencia sumaria parcial imponiéndole responsabilidad al Estado por la culpa o negligencia observada por sus funcionarios en el referido proceso de evaluación, <u>únicamente dejando pendiente el desfile de prueba respecto a la valoración de daños</u>.

Celebrada la vista sobre la valoración y adjudicación de daños, el tribunal de instancia emitió sentencia final en la cual determinó que, conforme el testimonio del Sr. Lebrón y su siquiatra, la Dra. Carmen Laura Martínez Cotto, el Sr. Lebrón fue víctima de burlas y maltrato, de parte de sus compañeros de trabajo, a causa del descenso indebido

---

[3] Posteriormente, el Sr. Lebrón Bonilla desistió de su reclamación contra los funcionarios antes mencionados, en su

decretado por la Administración, que incluyó el envió de anónimos y palabras soeces hacia su persona. Determinó, además, el foro de instancia que "las bromas de mal gusto continuaron por bastante tiempo, inclusive en ocasiones se manifestaron por el radio de comunicación interna entre los guardias penales. En ocasiones el demandante tenía que apagar el radio para evitar que sus compañeros de trabajo continuaran burlándose de él".

Conforme las determinaciones del foro de instancia, dicha situación afectó el sistema nervioso del Sr. Lebrón Bonilla, causando que éste se deprimiera, no durmiera adecuadamente y que se sintiera intensamente triste y desolado; su estado anímico se laceró a tal grado que éste dejó de participar en actividades familiares y casi no se comunicaba con ellos. Aunque le costó mucho trabajo aceptar que necesitaba ayuda profesional, el Sr. Lebrón finalmente decidió acudir a una siquiatra.

El tribunal de instancia acogió la determinación de la antes mencionada perito psiquiatra a los efectos de que la causa de la depresión del Sr. Lebrón correspondió, única y exclusivamente, a los hechos antes relatados y que éste todavía, para el día del juicio, exhibía rasgos de una depresión. El trastorno emocional del Sr. Lebrón llegó a tal grado que "eventualmente las autoridades correspondientes le quitaron el arma de reglamento", ocasión en que la referida perito psiquiatra "recomendó reposo total" para éste. Según

_____

carácter individual, dictándose la correspondiente sentencia

la apreciación del tribunal de instancia, el Sr. Lebrón manifestaba una depresión seria.

En mérito de lo anterior, el tribunal sentenciador condenó al Estado Libre Asociado a pagarle al Sr. Lebrón Bonilla la cantidad de $40,000.00, "en concepto de los daños físicos y angustias y sufrimientos mentales y morales, pasados, presentes y futuros" y el pago de costas e intereses.

Inconforme, el Estado Libre Asociado apeló dicha sentencia ante el Tribunal de Circuito de Apelaciones por entender, en lo aquí pertinente, que había errado el tribunal primario en "la apreciación y valoración de los daños reclamados", solicitando que se redujera la indemnización concedida por ser ésta una cuantía exagerada.

Mediante sentencia de fecha 21 de enero de 2000, el tribunal intermedio apelativo revocó la sentencia emitida por el tribunal de instancia, por otro fundamento. El tribunal apelativo intermedio consideró que los daños sufridos por el aquí peticionario constituían un "accidente de trabajo", dentro de la esfera cubierta por la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley de Compensaciones o Ley), 11 L.P.R.A. sec. 1 et seq.; ello alegadamente conforme lo resuelto en Pacheco Pietri v. E.L.A., 133 D.P.R. 907 (1993). Determinó, en consecuencia, que constituyendo un accidente de trabajo, cobijado por la referida Ley, resultaba aplicable a la situación de hechos

---

parcial el 24 de abril de 1997.

la doctrina establecida en el Artículo 18, 11 L.P.R.A. sec. 21, la cual acarrea la inexistencia de causa de acción.

Inconforme, el peticionario Lebrón Bonilla acudió ante este Tribunal, vía certiorari, alegando que el tribunal apelativo intermedio incidió:

> "...al desestimar la demanda instada en el presente caso alegando inexistencia de causa de acción por inmunidad patronal."

**Expedimos** el recurso solicitado. Contando con la comparecencia de las partes, y estando en posición de resolver, procedemos a así hacerlo.

I

La Ley del Sistema de Compensaciones por Accidentes del Trabajo es un estatuto de carácter remedial que pretende consagrar ciertas protecciones y beneficios al obrero que sufre un accidente, lesión o enfermedad en el curso de trabajo. Cátala Meléndez v. Fondo de Seguro del Estado, res. el 14 de abril de 1999, 99 T.S.P.R. 56; Pacheco Pietri v. E.L.A., 133 D.P.R. 907, 914 (1993). Así, dicha Ley establece un sistema de seguro compulsorio, mediante la correspondiente aportación patronal, que persigue proveer un remedio expedito y eficiente para los empleados. Dicho seguro compensa al obrero que se ha lesionado, incapacitado, enfermado o fallecido a causa de un accidente ocurrido en el trabajo. Martínez v. Bristol Myers, res. el 26 de enero de 1999, 99 T.S.P.R. 6. "Para éstos y para aquéllos que dependen

económicamente de su labor, se ha establecido un sistema de protección social que provee para el sostenimiento económico y tratamiento médico adecuado, colocando la carga de responsabilidad por el sostenimiento financiero de éste en los patronos". Pacheco Pietri, ante, 927. Véanse además Laureano Pérez v. Soto, 141 D.P.R. 77, 82 (1996); Alonso García v. Comisión Industrial, 103 D.P.R. 183 (1974).

A estos efectos, el Artículo 2 de la Ley, 11 L.P.R.A. sec. 2, protege a todos los obreros y empleados que trabajen por patronos asegurados, aquellos que cumplan con sus respectivas aportaciones patronales, que sufran lesiones, se inutilicen, o pierdan la vida por accidentes procedentes de un acto o función inherente a su trabajo o empleo, o que acontezcan en el curso o a causa del mismo, siendo acreedores a los remedios comprendidos en la misma.

Si el empleado sufre un "accidente de trabajo", éste no tiene que probar negligencia por parte del patrono o por parte de persona alguna para recibir los beneficios contemplados en la Ley. A cambio de dichos beneficios, la Ley confiere al patrono asegurado inmunidad en cuanto a las acciones civiles en daños y perjuicios que estos empleados lesionados pudieran presentarles. Martínez Rodríguez v. Bristol Myers, ante. Es decir, si el patrono ha cumplido con su obligación legal de asegurar a sus empleados ante el Fondo de Seguro del Estado, de ordinario no existe causa de acción en daños y perjuicios contra el patrono por el accidente de trabajo sufrido por ellos.

En otras palabras, hemos sostenido que el derecho de resarcimiento que tiene el empleado lesionado, enfermo o fallecido frente al patrono asegurado a tenor con la Ley, de ordinario se limita al pago de la compensación dispuesta en el estatuto, administrado por el Fondo de Seguro del Estado, por lo que el empleado carece de causa de acción para demandar a su patrono por los daños y perjuicios sufridos. Santiago Hodge v. Parke Davis Co., 126 D.P.R. 1, 8 (1990).

Específicamente, el Artículo 18 de la citada Ley establece la inmunidad patronal y la exclusividad del remedio contra cualquier reclamación, siempre y cuando dicha reclamación provenga de una lesión, enfermedad o muerte cubierta por dicha Ley. Dicho artículo reza:

> "Cuando el patrono asegure sus obreros y empleados de acuerdo con el presente Capítulo, el derecho aquí establecido para obtener compensación será el único remedio en contra del patrono, aun en aquellos casos en que se haya otorgado el máximo de las compensaciones o beneficios de acuerdo con el mismo; pero en el caso de accidentes, enfermedades o muerte de los obreros o empleados no sujetos a compensación de acuerdo con este Capítulo, la responsabilidad del patrono es y continuará siendo la misma que si no existiera el presente." 11 L.P.R.A. sec. 21. (Énfasis suplido.)

Se desprende del texto claro e inequívoco de la Ley que se deberá evaluar si el hecho, accidente, lesión, enfermedad o muerte alegado en una demanda civil se encuentra comprendido dentro del marco de la inmunidad que confiere la Ley de Compensaciones por Accidentes del Trabajo, ante, y si se ha reclamado o compensado el mismo de alguna manera en el Fondo del Seguro del Estado. B.C.R. Co., Inc. v. Tribunal Superior, 100 D.P.R. 754, 758-759 (1972).

Para que la reclamación se entienda como un "accidente de trabajo", esto es en cuanto a qué constituye un accidente de trabajo conforme a la ley, hemos establecido los siguientes requisitos:

1) provenir de cualquier acto o función del obrero;

2) ser inherente al trabajo o empleo que desempeña el obrero;

3) ocurrir en el curso del trabajo;

4) ser consecuencia de éste.[4]

Así, hemos reiterado que la protección brindada en el referido Artículo 2, ante, "se extiende a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste". Ortiz Pérez v. F.S.E., 137 D.P.R. 367, 373 (1994); Pacheco Pietri y otros v. E.L.A., ante, Díaz Ortiz v. F.S.E., 126 D.P.R. 32 (1990), Cardona Velásquez v. Comisión Industrial, 90 D.P.R. 257 (1964). Entonces, para poder reclamar dentro del contexto de la Ley, se requiere la existencia de un nexo causal entre la lesión, enfermedad, o muerte del obrero y su trabajo. Por ende, el accidente sufrido por el obrero carece de protección si dicho accidente no cumple con uno de los citados requisitos, por lo que "corresponde a la parte que solicita la compensación

---

[4] Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485 (1985); Admor., F.S.E. v. Comisión Industrial, 101 D.P.R. 56 (1973); Santiago Hodge v. Parke Davis Co., ante, Cardona v. Comisión Industrial, 56 D.P.R. 847 (1940).

demostrar que el accidente sufrido está cobijado bajo la Ley de Compensaciones por Accidentes del Trabajo". Id.

Además, al evaluar si el accidente de trabajo es o no compensable a tenor con la Ley, se deberán considerar los siguientes factores: (1) si es un requisito del trabajo y si se efectuó por órdenes del patrono, o si es un acto voluntario del obrero, aunque mediara una sugestión del patrono; (2) si se realiza a beneficio del patrono, o a su requerimiento; y (3) si se hace en cumplimiento de una ley o reglamentación como condición para obtener o conservar el empleo. Pacheco Pietri y otros v. E.L.A., ante.

La evolución de dicha Ley ha permitido un enfoque liberal en torno a la interpretación de sus disposiciones. Esta interpretación liberal permite compensar al mayor número de empleados accidentados. Ortiz Pérez, ante, 373; Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486 (1993). De manera que, si existe duda en torno a la relación causal entre la ocupación del empleado como tal y la lesión, incapacidad o muerte del reclamante, entonces se deberá proveer el remedio correspondiente y la protección cobijada en ley. Id.

No obstante lo anteriormente señalado, hemos reconocido, a modo de excepción, que el patrono puede responder por daños y perjuicios ante el empleado que haya sufrido un "accidente de trabajo" si el mismo es provocado por actuaciones intencionales del patrono. Véase: Pacheco Pietri, ante, 919, citando a Odriozola, ante.

Procede que se enfatice que, en <u>Soc. de Gananciales</u> v. <u>Royal Bank de P.R.</u>, res. el 1 de abril de 1998, 98 T.S.P.R. 36, precisamos que la regla general es a los efectos de que una lesión compensable bajo la Ley activa la inmunidad patronal, <u>aunque la misma tiene sus excepciones, a saber</u>: "actuaciones intencionales del patrono y actuaciones discriminatorias del patrono que violenten una clara política pública". Aclaramos en dicho caso que puede existir la posibilidad de que "un patrón de traslados y comunicaciones internas en el escenario de trabajo, en los casos apropiados, podría ser constitutivo de un clima de hostigamiento y persecución que podría violar el derecho a la intimidad de un obrero", generando así una causa de acción independiente a cualquier otro remedio provisto en la Ley. No obstante, se requiere demostrar que las actuaciones del patrono son de tal naturaleza que dichas actuaciones generan "una atmósfera hostil para el obrero que impida del todo su sana estadía en el trabajo y que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el efectivo desempeño en el empleo o que contengan expresiones claramente difamatorias o lesivas".

Por otra parte, procede igualmente que se enfatice que, en <u>Cátala Meléndez</u> v. <u>Administrador del Fondo del Seguro del Estado</u>, ante, aclaramos que una lesión sufrida por un "procedimiento disciplinario *bona fide*", <u>no</u> se encuentra entre las lesiones compensables bajo la Ley de Compensaciones

por Accidentes del Trabajo. Expresamos en el antes citado caso

que:

> "Los procedimientos disciplinarios administrativos iniciados contra obreros o empleados tienen como objetivo velar por el cumplimiento de las normas establecidas dentro de los centros de trabajo. Responder a citaciones o a requerimientos de un patrono dentro de un proceso disciplinario *bona fide* no es una función inherente al empleo para los propósitos de la Ley de Compensaciones. Aunque se da en el contexto de una relación laboral, constituye una situación extraordinaria, ajena al normal desempeño de las funciones de un puesto en una empresa o negocio."

En el referido caso, la allí empleada sufrió daños emocionales como consecuencia del procedimiento disciplinario que culminó en su suspensión temporera de empleo y sueldo. Destacamos, sin embargo, que aún cuando la lesión sufrida por ésta constituía una condición emocional agravada por los trámites administrativos disciplinarios, los mismos <u>no</u> guardaban relación causal con las labores inherentes al puesto de ella. Expresamos que "el requisito de que el accidente ocurra como consecuencia de ejecutar una `función inherente al empleo´ significa que la lesión ocurra mientras el empleado u obrero realiza las labores normales de su puesto". Id.

Por ende, concluimos en dicho caso que las alegaciones en el mismo "están más próximas a una reclamación por concepto de daños y perjuicios, por un alegado trámite negligente del proceso administrativo, que una reclamación por un accidente ocupacional". Es por ello que resolvimos que no opera la exclusividad del remedio ni la inmunidad patronal concedida en la Ley de Compensaciones en casos donde la lesión sufrida,

por no guardar relación causal con las labores inherentes al puesto, está fuera del alcance de la protección cobijada en dicha Ley.

## II

Nos compete determinar, en el presente caso, si la notificación de la Administración de Corrección al Sr. Lebrón Bonilla, indicándole que éste no había aprobado el periodo probatorio y descendiéndolo al puesto que ocupaba, unida a una evaluación distinta a la que él discutió con su supervisor y ambos firmaron, constituye una lesión o accidente al amparo de la Ley --lo cual activa la exclusividad del remedio y la inmunidad patronal establecida en dicho estatuto-- o si, por el contrario, se asemeja más a una reclamación en daños por trámite negligente en el proceso administrativo.

De entrada, cabe distinguir el caso de marras de los hechos de Pacheco Pietri, ante. En dicho caso, cumpliendo con un requisito sobre muestras de orina para detectar el uso de sustancias controladas de los empleados de la Administración de Corrección, un funcionario del Instituto de Ciencias Forenses se equivocó y anotó erróneamente en el expediente de Pacheco Pietri el resultado positivo del análisis de orina de otro empleado. Debido a ese error, se tomaron varias medidas administrativas, incluyendo someterlo a tratamiento contra la adicción.

Al concluir que el error cometido quedaba cobijado bajo el estatuto, destacamos que el accidente ocurrió por un acto

**negligente de otro empleado**. "Fue precisamente al llevar a cabo un acto a instancias y por órdenes del patrono, para beneficio de éste y como condición para la continuidad en el empleo, que ocurrió el accidente." <u>Pacheco Pietri</u>, ante, 921. Como el patrono no incurrió en conducta intencional y el error cometido era consecuencia de la negligencia de otro co-empleado, en una relación de empleo, sostuvimos que existió el nexo causal entre la función inherente del trabajo y el accidente. Id.

El caso ante nos, sin embargo, perfila una situación distinta. La Administración de Corrección poseía el control total y exclusivo del expediente de Bonilla, incluyendo todas las evaluaciones que le fueron hechas durante el período probatorio, el cual había finalizado. Surgía claramente de su expediente que éste efectivamente había cumplido con los requisitos inherentes a sus funciones de trabajo y que él había terminado el período probatorio. Concluido el término probatorio, habiendo cumplido con los requisitos exigidos para mantenerse en el puesto y habiendo sido evaluado de manera satisfactoria conforme al reglamento de la propia agencia, sorpresivamente la Administración le envía una carta al Sr. Lebrón en la cual le indica que no había aprobado el periodo probatorio, basada dicha determinación en una alegada evaluación distinta y contraria a la realizada. No conforme con ello, la Administración trasladó al Sr. Lebrón a un campamento penal en Río Grande, sin que éste lo solicitara y sin que ello constituyera una necesidad del servicio.

**Claramente, se desprende que la conducta de la Administración**

**no sólo fue altamente irregular, sino que es contraria a los**

**postulados de la Ley de Personal del Servicio Público y al**

**propio Reglamento de Personal de la Administración de**

**Corrección (Reglamento).[5]**

---

[5] El Artículo 6 de la Ley de Personal del Servicio Público, 3 L.P.R.A. Sec. 1334, dispone, en lo pertinente: "(5) <u>Los traslados no podrán ser utilizados como medida disciplinaria ni podrán hacerse arbitrariamente. Sólo podrán hacerse a solicitud del empleado, o cuando responden a necesidades del servicio según se establezca mediante reglamento y el traslado no resulte oneroso para el empleado.</u> Se exceptúan de esta disposición aquellos sistemas en que se utilice el concepto de rango." (Énfasis suplido.)

Por otra parte, la sección 7.2 del Reglamento de Personal de la Administración de Corrección del 28 de septiembre de 1979, según enmendado, en lo pertinente, dispone:

1. <u>Objetivo de los Traslados</u>

El traslado podrá efectuarse para beneficio del empleado, a solicitud de éste, o respondiendo a necesidades del servicio público en situaciones tales como las siguientes:

   a. Cuando exista la necesidad de recursos humanos adicionales en una agencia para atender nuevas funciones o programas, o para la ampliación de los programas que ésta desarrolla.

   b. Cuando se eliminen funciones o programas por efectos de reorganización en el Gobierno o en una agencia, y cuando en el proceso de decretar cesantías sea necesario reubicar empleados.

   c. Cuando se determine que los servicios de un empleado pueden ser utilizados más provechosamente en otra dependencia de la Administración de Corrección o en otra agencia del Gobierno debido a sus conocimientos, experiencia, destrezas o cualificaciones especiales, especialmente en casos donde éste ha adquirido más conocimientos y desarrollado mayores habilidades como consecuencia de adiestramiento.

   d. Cuando sea necesario rotar el personal de la Administración de Corrección para que se adiestre en otras áreas.

3. Normas para los Traslados

Las siguientes normas regirán los traslados:

   a. <u>En ningún caso se utilizará los traslados como medida disciplinaria ni podrá hacerse arbitrariamente.</u>

Los hechos relatados, <u>no</u> configuran un mero error, en cumplimiento de un requisito de trabajo o que proviene de un acto del empleo o que se realizó a beneficio o requerimiento del patrono. El Sr. Lebrón Bonilla cumplió cabalmente con los requisitos y las funciones inherentes de su empleo al cumplir con el periodo probatorio y terminar el mismo.[6] <u>Finalizado dicho período probatorio, y habiendo él continuando ejerciendo su trabajo, éste no sólo gozaba de un interés propietario en su puesto sino que las circunstancias crearon una expectativa de continuidad en el mismo</u>.[7] Cualquier acto

---

b. <u>La Administración de Corrección será responsable de establecer procedimientos que aseguren la imparcialidad en los traslados que se proponga efectuar respondiendo a necesidades de servicio</u>, con atención especial a aspectos tales los que siguen, a los efectos de evitar que la acción del traslado le produzca al empleado problemas económicos sustanciales sin que le provea la compensación adecuada:
   1. naturaleza de las funciones del puesto al cual vaya a ser trasladado el empleado.
   2. conocimientos, habilidades especiales, destrezas y experiencia que se requieren para el desempeño de las funciones.
   3. normas de reclutamiento en vigor para la clase de puestos al cual vaya a ser trasladado el empleado;
   4. <u>retribución que esté percibiendo el empleado a ser trasladado</u>; y

   5. otros beneficios marginales e incentivos que esté disfrutando el empleado a ser trasladado. (Énfasis suplido.)

[6] La sección 6.8 del Reglamento, ante, en lo pertinente, dispone:

   2. El período de trabajo probatorio abarcará un ciclo completo de las funciones del puesto. La duración de dicho período se establecerá sobre esta base y <u>no será menor de tres (3) meses ni mayor de un (1) año. El período probatorio no será prorrogable.</u>(Énfasis suplido.)
   3.

[7] "En Puerto Rico un empleado público tiene un reconocido interés en la retención de su empleo si dicho interés está protegido por ley (empleado de carrera) o cuando las

posterior que altere los derechos adquiridos, remontándose al período probatorio ya vencido, es ilegal por ser contrario al Reglamento de Personal de la misma Administración y la Ley de Personal de Servicio Público.

La conducta de la Administración, al arbitraria y repentinamente degradar, trasladar y reducir el sueldo del Sr. Lebrón, no es una función inherente del empleo como tampoco proviene de un acto del empleado. Por lo tanto, los hechos del caso ante nos excluyen la relación causal necesaria entre la lesión y el desempeño de las funciones inherentes del puesto del Sr. Lebrón Bonilla, no constituyendo los daños sufridos por éste, como consecuencia de la actuación ilegal de la Administración de Corrección, un "accidente del trabajo" cubierto por la inmunidad patronal.

### III

En mérito de lo anterior, la inmunidad patronal que establece la Ley de Compensación por Accidentes del Trabajo no cubre la irregularidad ocurrida en el caso del Sr. Lebrón Bonilla, a raíz de las actuaciones ilegales de la Administración. Avalar dichas actuaciones y ampararlas bajo el palio de la inmunidad patronal vulnera los derechos de la fuerza laboral, privándola de una reclamación genuina por los daños y perjuicios sufridos por actuaciones arbitrarias e ilegales del patrono.

---

circunstancias crean una expectativa de continuidad." Orta v. Padilla Ayala, 131 D.P.R. 227, 241 (1992). Véase además, Díaz Martínez v. Policía de P.R., 134 D.P.R. 144, 148 (1993).

Es evidente que el Sr. Lebrón Bonilla sufrió una depresión a causa de la situación laboral en la que se vio sumergido, la cual suscitó constantes humillaciones de parte de sus compañeros y le creó un ambiente de trabajo hostil y ofensivo. Aunque ciertamente los daños se produjeron en el contexto de una relación laboral, dicha situación es totalmente ajena al desempeño normal de las funciones del puesto, por lo que no encaja dentro de los requisitos causales para configurar una lesión comprendida en la Ley de Compensaciones.

Como señalamos en Cátala Méndez, ante, "una condición emocional que surja o se agrave exclusivamente como consecuencia de recibir citaciones, notificaciones de decisiones administrativas, o por otras gestiones propias de este tipo de procedimientos... no constituye una lesión compensable bajo dicho estatuto".

Incidió el foro apelativo al entender que dichos hechos constituyen un "accidente de trabajo" bajo la Ley de Compensaciones, razón por la cual es errónea su determinación de que el Sr. Lebrón Bonilla carecía de una causa de acción. Los daños sufridos por éste, producto de las actuaciones arbitrarias, irrazonables y caprichosas de la Administración, son compensables en el ámbito de los daños y perjuicios y no se encuentran protegidos por la inmunidad patronal de dicha Ley. Resolver de otra manera socava los derechos de los obreros perjudicados a recibir compensación

por actos ilegales del patrono que no están bajo el alcance de la Ley de Compensación y su respectiva inmunidad patronal.

Por los fundamentos antes expuestos, procede la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso a dicho foro judicial para que proceda a dilucidar, en sus méritos, el señalamiento de error planteado por el Estado Libre Asociado de Puerto Rico, esto es, que el tribunal de instancia erró en "la apreciación y valoración de los daños reclamados.

Se dictará Sentencia de conformidad.


**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

David Lebrón Bonilla

    Demandante-apelado
    recurrente

        vs.                  CC-2000-181      CERTIORARI

Estado Libre Asociado de
Puerto Rico, Administración
de Corrección

    Demandados-apelantes
    recurridos

**SENTENCIA**

**San Juan, Puerto Rico a 30 de octubre de 2001**

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, devolviéndose el mismo a dicho foro judicial para que proceda a resolver, en sus méritos, el planteamiento del Estado Libre Asociado de Puerto Rico a los efectos de que el Tribunal de Primera Instancia erró en "la apreciación y valoración de los daños reclamados".**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García, la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Rivera Pérez no intervinieron.**

**Isabel Llompart Zeno
Secretaria del Tribunal Supremo**