# 2006 DTA 91

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

CANDELARIA AMADOR DE VALERA
Recurrida

v.

JOSÉ G. RIVERA POLANCO
Recurrente

CORPORACIÓN FONDO DEL SEGURO DEL ESTADO
Aseguradora-Recurrida

Núm. KLRA-2005-00926

San Juan, Puerto Rico, a 21 de junio de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas, y
los Jueces Gierbolini y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 13 de diciembre de 2005, el Dr. José G. Rivera Polanco (Dr. Rivera) presentó recurso de revisión administrativa en el que solicitó la revocación de la Resolución emitida por la Comisión Industrial de Puerto Rico (la Comisión) el 8 de noviembre de 2005, notificada y archivada en autos el 10 de noviembre de 2005. [1] Mediante dicho dictamen, la Comisión declaró "*no ha lugar*" la solicitud de reconsideración presentada por el Dr. Rivera.

A continuación expondremos el trasfondo fáctico y procesal del caso.

### I

Desde enero de 1985, Candelaria Amador de Valera (Amador) se desempeñaba como secretaria en la oficina del Dr. Rivera. ■

El 13 de junio de 1994, el Dr. Rivera le envió una carta a Amador en la que le notificó que estaba despedida por haber violado las normas de la oficina médica. Alegadamente, Amador había utilizado los formularios de prescripciones médicas para dispensar recetas a los pacientes, función que sólo le correspondía al Dr. Rivera. ■

El 14 de junio de 1994, Amador se reportó a la Corporación del Fondo del Seguro del Estado (F.S.E.) alegando haber sufrido un accidente laboral. El 25 de agosto de 1994, prestó una declaración jurada ante un Investigador del F.S.E. En lo pertinente, declaró que en el 1991, mientras atendía a un paciente, se dispuso a sentarse en una silla y se cayó. Añadió, que a raíz del accidente comenzó a padecer de dolor lumbar. En cuanto a la condición emocional, Amador declaró que desde principios del 1993, comenzó a sentirse mal de los nervios por causa de la presión de trabajo y el trato humillante al que era sometida por parte del Dr. Rivera. Según Amador, no había solicitado antes los servicios del F.S.E. porque el Dr. Rivera no tenía vigente la póliza de seguro obrero-patronal. ■

El 20 de marzo de 1995, Amador fue dada de alta definitiva, con incapacidad, por el F.S.E. ■

El 25 de mayo de 1995, el F.S.E. notificó al Dr. Rivera la decisión del Administrador en la que se le declaró "*patrono no asegurado*" con respecto al alegado accidente del trabajo que sufrió Amador. El Administrador basó su determinación en que el Dr. Rivera no tenía una póliza vigente de seguro obrero-patronal a tenor con las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. Por otro lado, el F.S.E. le apercibió al Dr. Rivera sobre su derecho a apelar la decisión del Administrador ante la Comisión dentro de los treinta (30) días después de notificada la misma, según dispone el Artículo 10 de la Ley de Sistemas de Compensaciones por Accidentes del Trabajo.

El 6 de junio de 1995, el F.S.E. elevó el expediente a la Comisión, puesto que se trataba de un patrono no asegurado que negaba la responsabilidad por el accidente.

El 3 de mayo de 1996, notificada el 16 de mayo de 1996, la Comisión emitió Resolución en la que le concedió a Amador un término de treinta (30) días para que presentara el formulario de Petición de Compensación.

El 20 de mayo de 1996, Rivera suscribió una carta a la Comisión en la que negó responsabilidad por el accidente del trabajo que alegadamente había sufrido Amador. Añadió, que ésta no era empleada, sino que tenía un contrato por servicios profesionales.

El 30 de mayo de 1996, Amador presentó Petición de Compensación ante la Comisión. Resalta de la Petición de Compensación que Amador expuso que por causa de la presión en el trabajo, las humillaciones que recibía por parte del Dr. Rivera y el despido, desarrolló una condición emocional que le afectó para realizar cualquier labor remunerativa. Cabe señalar, que no mencionó la alegada caída que había sufrido en el año 1991. ■

Luego de algunos incidentes procesales interlocutorios, el 18 de diciembre de 1996, la Comisión emitió Resolución en la que resolvió que la determinación sobre patrono no asegurado advino final y firme.

El 3 de abril de 1997, el Dr. Rivera presentó *"Escrito Informativo"* en el que alegó que nunca se le notificó de las vistas médicas celebradas en el caso, violándose así el debido proceso de ley. Además, sugirió las fechas del 14 y 21 de mayo para que Amador fuera evaluada por un psiquiatra privado del patrono.

El 18 de abril de 1997, notificada en esa misma fecha, la Comisión emitió Resolución en la que declaró *"con lugar"* la solicitud de evaluación psiquiátrica presentada por el Dr. Rivera. A tal efecto, se le ordenó a Amador que compareciera a la oficina del Dr. Fernando J. Cabrera para la evaluación. Además, se le advirtió que de no comparecer a la referida evaluación, el caso podía ser desestimado y la compensación otorgada dejada sin efecto. Así las cosas, el 22 de abril de 1997, notificada el 23 de abril de 1997, la Comisión emitió Resolución en la que indicó que la evaluación de Amador quedaba pautada para el 24 de mayo de 1997 a la 1:00 p.m.

Luego de otros incidentes procesales interlocutorios, el 5 de mayo de 1997, el Dr. Rivera presentó escrito intitulado *"Moción Solicitando Órdenes"*. Mediante la misma, solicitó a la Comisión la autorización para inspeccionar los récords médicos de Amador.

El 13 de mayo de 2003, Amador presentó *"Moción Solicitando Reconsideración y Solicitud de Vista Pública"* en la que señaló que no estaba de acuerdo con la evaluación psiquiátrica que se le había ordenado y solicitó la celebración de una vista para discutir dicho asunto.

Transcurridos otros incidentes procesales interlocutorios, el 21 de junio de 2005, la Comisión celebró vista pública en el caso. El Dr. Rivera planteó que la Comisión no tenía jurisdicción para continuar con los procedimientos, puesto que no se había celebrado la vista médica, la cual era de carácter jurisdiccional. También alegó que Amador aún no había sido sometida a la evaluación psiquiátrica por el médico privado del patrono, como tampoco había permitido examinar los récords de todos los médicos privados que la habían atendido. Por su parte, Amador sostuvo que la Comisión tenía jurisdicción para considerar el caso, puesto que la controversia pendiente de ser dilucidada versaba sobre la responsabilidad del accidente. Añadió, que hasta tanto no se resolviera dicha controversia no procedía pasar juicio sobre aquellos asuntos relacionados con la evaluación psiquiátrica y los récords médicos. Atendidos los planteamientos de las partes, la Comisión resolvió que tenía jurisdicción para dilucidar la controversia sobre la responsabilidad del accidente. Las partes estipularon que en efecto existía una relación obrero-patronal.

Continuada la vista, la Comisión determinó que existía una relación obrero-patronal y que la decisión de *"patrono asegurado"* era final y firme, por lo que estaba lista para resolver la controversia sobre responsabilidad de accidente y compensabilidad. Ello así, comenzó el desfile de prueba con el testimonio de Amador. Culminado dicho testimonio, la Comisión señaló que aún faltaba por escuchar las declaraciones del Dr. Rivera, por lo que era necesario decretar una continuación de vista.

No empece a lo anterior, el 8 de agosto de 2005, notificada el 13 de septiembre de 2005, la Comisión emitió

Resolución en la que concluyó que ni el Artículo 10 ni el Artículo 15 de la Ley de Compensaciones le otorgaban jurisdicción original para adjudicar controversias de compensabilidad. En virtud de lo anterior, la Comisión resolvió:

"Determinar que no tenemos jurisdicción para revisar la decisión del Administrador notificada el 25 de mayo de 1995, sobre estatus patronal, ya que la misma no fue apelada por el patrono dentro del término jurisdiccional provisto por ley.

DEJAR SIN EFECTO LA ALEGACIÓN DEL PATRONO DR. JOSÉ G. RIVERA POLANCO. En su consecuencia se DETERMINA que entre la parte apelante y el patrono existió, a la fecha del alegado accidente reportado, una relación obrero-patronal, según definida por el Artículo 2, de la Ley de Compensaciones por Accidentes del Trabajo: Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensación por Accidentes del Trabajo, 11 L.P.R.A. § 1 et seq.

DEVOLVER este caso a la jurisdicción del Asegurador para que se continúe con los procedimientos.

HONORARIOS

Fijar al Lic. Iván Torres Rivera honorarios de abogado equivalente a un quince por ciento (15%) de cualquier compensación (incluyendo dietas) que en su día pueda recibir la parte apelante, si alguna, como resultado del presente recurso.

ORDENAR al Administrador de la Corporación del Fondo del Seguro del Estado pagar los honorarios aquí fijados según dispone la Ley Núm. 45 de 18 de abril de 1935, según enmendada conocida como Ley del Sistema de Compensaciones por Accidente del Trabajo, 11 L.P.R.A. § 1 et seq."

Oportunamente, el 28 de septiembre de 2005, Rivera presentó Moción de Reconsideración.

El 13 de octubre de 2005, notificada el 13 de octubre de 2005, la Comisión emitió "Notificación Acogiendo Moción Para Reconsideración y Orden" en la que acogió la solicitud de reconsideración presentada por Rivera.

El 8 de noviembre de 2005, notificada el 10 de noviembre de 2005, la Comisión emitió Resolución en Reconsideración en la que declaró "no ha lugar" la solicitud de reconsideración presentada por Rivera.

Inconforme con el dictamen de la Comisión, el 13 de diciembre de 2005, Rivera presentó recurso de revisión en el que señaló la comisión de los siguientes errores:

"A. ERRÓ LA HONORABLE COMISIÓN AL DECLARAR NO HA LUGAR NUESTRA MOCIÓN DE RECONSIDERACIÓN, AL NO PERMITIR QUE LA OBRERA FUERA EVALUADA NI QUE EL PATRONO PRESENTARA DIERA (sic) SU TESTIMONIO EN RELACIÓN AL ALEGADO ACCIDENTE.

B. ERRÓ LA HONORABLE COMISIÓN AL DEJAR SIN EFECTO LAS ALEGACIONES DEL PATRONO SOBRE LA RELACIÓN OBRERO-PATRONAL Y DECLARARSE SIN JURISDICCIÓN, ORDENANDO EL TRASLADO DEL CASO AL F.S.E."

## II
La Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 et seq., conocida como la "Ley del Sistema de Compensaciones por Accidentes del Trabajo" (en adelante, la Ley de Compensaciones), [7] establece un sistema de seguro compulsorio o de protección social mediante el cual se le provee al empleado, lesionado o accidentado en el curso de su empleo, tratamiento médico y ayuda económica. Nieves Dairy Farm v.

*Corp. del Fondo del Seguro del Estado,* 162 D.P.R. __, **2004 JTS 161**, a la página 257, Opinión de 24 de septiembre de 2004; *Lebrón Bonilla v. E.L.A., Administración de Corrección,* 155 D.P.R. 475, 481-482 (2001).

A tenor con lo dispuesto en el Artículo 2 de la Ley de Compensaciones, 11 L.P.R.A. sec. 2, todos los obreros o empleados que sufran lesiones, se inutilicen o pierdan la vida por accidentes relacionados con cualquier acto o función inherente a su trabajo o empleo, y que ocurran en el curso de éste y como consecuencia del mismo, o por enfermedades o muertes derivadas de la ocupación, según se especifican en la Ley, están cubiertos por ella y tienen derecho a sus beneficios.

De otra parte, el Artículo 20 [18] de la aludida Ley, 11 L.P.R.A. sec. 21, establece que en las circunstancias de un accidente en el curso del empleo existe un remedio exclusivo a favor de los empleados de patronos asegurados, lo que equivale a la creación de una inmunidad a favor de los patronos asegurados contra cualquier otro tipo de reclamación que se le pueda incoar en tales casos. *Guzmán y otros v. De Jesús,* 155 D.P.R. 296, 301-302 (2001). Aun cuando el patrono asegurado no alegue en su contestación la inmunidad que le provee la ley, éste estará protegido, ya que se trata en efecto de inexistencia de causa de acción y no de una mera defensa.

Para gozar de la protección que ofrece la Ley de Compensaciones, el patrono debe asegurar a sus empleados en el F.S.E. y pagar la prima correspondiente dentro de los términos provistos para ello. A tal efecto, el Artículo 18 ▮ de la Ley, 11 L.P.R.A. sec. 19, establece lo siguiente:

*"Todo patrono de los comprendidos dentro de las disposiciones de este capítulo estará obligado a asegurar a sus obreros o empleados en el Fondo del Seguro del Estado (sic) la compensación que éstos deban recibir por lesiones, enfermedad o muerte, y fijará un aviso escrito o impreso en sitio visible al público y en forma fácilmente legible, informando el hecho de estar asegurado."*

A su vez, el Artículo 27 [25] de la referida ley, 11 L.P.R.A. sec. 28, dispone que:

*"Será deber de todo patrono el presentar al Administrador, no más tarde del 20 de julio de cada año, un estado expresando el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior... Sobre la suma total de jornales declarados en ese estado, será computada la cuota dispuesta... a pagar por el patrono ...*

*...Disponiéndose, que todo patrono que no hubiere presentado el estado a que se refiere esta sección dentro del término que aquí se fija, será considerado como un patrono no asegurado.*

*El seguro de cada patrono por el Estado comenzará a regir inmediatamente después de que haya sido archivada en las oficinas del Administrador de la Corporación del Fondo del Seguro del Estado su nómina o estado acompañado del importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el Administrador. Disponiéndose, que cualquier accidente que ocurra antes de verificarse el pago, será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador de la Corporación del Fondo del Seguro del Estado, en el cual el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado en la oficina del Administrador.*

*...Mientras no se haya hecho este pago por el patrono, dicho patrono no tendrá derecho a las inmunidades provistas por este capítulo con respecto a las lesiones, enfermedades o muertes que pudieren ocurrir a los obreros o empleados de tal patrono durante el período que cubre el pago de dichas primas."*

Conforme a lo anterior, si el patrono no paga dicha prima o la paga tarde, de manera que un accidente ocurra

durante el tiempo que la póliza se encuentra al descubierto, éste será declarado patrono no asegurado. *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a la página 260. En consecuencia, el F.S.E. *"determinará la compensación que proceda, más los gastos (médicos) en el caso y cobrará al patrono dicha cantidad...".* Artículo 15 [13] de la Ley de Compensaciones, 11 L.P.R.A. sec. 16. De otra parte, el patrono pierde la inmunidad provista por la ley y estará expuesto a la presentación de una reclamación en daños y perjuicios bajo el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. Véase *Guzmán y otros v. De Jesús, supra*, a la página 302.

La Ley de Compensaciones le concede al F.S.E. la jurisdicción original para determinar si un patrono está o no asegurado, es decir, para determinar el *status* patronal. *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a las páginas 260-261. Aquel patrono que no esté conforme con la determinación del F.S.E. declarándolo no asegurado podrá acudir en apelación ante la Comisión. A tal efecto, el Artículo 10 ■ de la Ley de Compensaciones, 11 L.P.R.A. sec. 11, que regula el procedimiento apelativo ante la Comisión, dispone en su parte pertinente que:

*"Si el obrero o empleado, o sus beneficiarios, no estuvieron conformes con la decisión dictada por el Administrador de la Corporación del Fondo del Seguro del Estado en relación con su caso, podrán apelar ante la Comisión Industrial dentro de un término de 30 días después de haber sido notificados con copia de la decisión del Administrador, y el caso se señalará para ser oído por un Comisionado. En los casos de patronos no asegurados tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez declarado no asegurado el patrono por el Administrador, teniendo el patrono un término de 30 días para apelar de la decisión del Administrador declarándolo no asegurado, y el caso podrá ser visto por un Comisionado de la Comisión Industrial...".*

De conformidad con la disposición anterior, se le reconocen capacidad jurídica al obrero y a sus beneficiarios para recurrir a la Comisión cuando no estuvieren conformes con la determinación del F.S.E. en cuanto a su caso. De igual forma, se le reconoce capacidad jurídica para acudir en apelación ante la Comisión a un patrono cuando no esté de acuerdo con los pronunciamientos del F.S.E. declarándolo no asegurado. El citado precepto claramente establece un término de treinta (30) días para apelar la determinación del F.S.E. Dicho término es de carácter jurisdiccional. *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a la página 261 citando el caso *Franco v. J. Pérez & Cía, Inc.*, 124 D.P.R. 349, 361 (1990), voto particular del Juez Alonso Alonso; *Kelly Temporary Services v. F.S.E.*, 142 D.P.R. 290, 299 (1997).

A tenor con lo antes discutido, podemos concluir *"que cuando un patrono es declarado no asegurado por el Fondo, aquél tiene reglamentariamente dos opciones inmediatas: someter evidencia adicional al Fondo para que éste reconsidere y revoque su decisión previa, o puede acudir directamente a la Comisión para que ésta revise la decisión del Fondo".* *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a la página 262 citando a *Kelly Temporary Services v. F.S.E., supra*, nota alcalce 5, a la página 301.

Ahora bien, el Artículo 15 [13] de la Ley de Compensaciones, 11 L.P.R.A. sec. 16, establece el procedimiento a seguir cuando un patrono no asegurado niega responsabilidad por el accidente. A esos fines, el referido artículo dispone que cualquier empleado lesionado o sus beneficiarios pueden proceder contra el patrono mediante la presentación de una petición de compensación ante la Comisión y, además, pueden instar una acción en daños y perjuicios. También dispone que, *"[e]n aquellos casos en que la contención sea entre el patrono y el Administrador, en relación con la cubierta de seguro -status patronal-, si el patrono no aceptare la responsabilidad del accidente, el caso será elevado por el Administrador ante la Comisión Industrial, la que decidirá la controversia...".* El que un patrono pueda cuestionar su responsabilidad por el accidente depende de que se la haya declarado no asegurado, pues el patrono asegurado, por estar cobijado por la inmunidad que le reconoce la Ley de Compensaciones, no tiene capacidad jurídica para cuestionar su responsabilidad por el accidente ante la Comisión. Véase *Santiago Mitchell v. F.S.E.*, 141 D.P.R. 388, 396 (1996), nota al calce número

3.

Así pues, cuando en un caso el patrono que es declarado no asegurado, no acepta la responsabilidad por el accidente, serán las partes en el proceso administrativo éste y el obrero lesionado, limitándose el F.S.E. a referir el caso a la Comisión para su adjudicación. A tenor con lo anterior, se desprende que la Comisión tendrá jurisdicción original para adjudicar la responsabilidad por accidentes en los casos de patronos no asegurados. *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a la página 261. Sobre el particular, el Tribunal Supremo en el caso *Santiago Mitchell v. F.S.E., supra*, a la página 394, resolvió lo siguiente:

*"El Artículo 15 de la Ley de Compensaciones, 11 L.P.R.A. sec. 16, dispone que en aquellos casos en que el patrono haya sido declarado como no asegurado por el Administrador del Fondo, "si el patrono no aceptare responsabilidad del accidente, el caso será elevado por el Administrador a la Comisión Industrial, la que decidirá la controversia".* **Conforme lo claramente dispuesto por el referido artículo, la jurisdicción original para adjudicar la responsabilidad por accidentes en casos de patronos no asegurados, en el proceso administrativo, recae exclusivamente en la Comisión Industrial.** *En estos casos, las partes lo son, el patrono y el obrero, limitándose el Fondo, una vez negada la responsabilidad, a referir el caso a la Comisión para adjudicación en primera instancia. (Citas omitidas)"* (Énfasis nuestro)

De otra parte, en el caso *Kelly Temporary Services v. F.S.E., supra*, en la nota alcalce 3, a la página 300, el Tribunal Supremo comentó el alcance de la jurisdicción original de la Comisión conforme el Artículo 15 de la Ley de Compensaciones al expresar lo siguiente:

*"Es correcta la determinación de la Comisión en cuanto a que la jurisdicción original provista en dicho artículo [15] se circunscribe únicamente a la responsabilidad por el accidente, de lo cual este caso no trata. Del antes citado Art. 10 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, surge claramente que es el Fondo del Seguro del Estado (en adelante Fondo) el que determina en primera instancia el status patronal, después de lo cual el patrono puede acudir en apelación a la Comisión, quien podrá entonces revisar la decisión del Fondo."*

Examinadas las disposiciones anteriores, y la jurisprudencia aplicable, resulta claro que existe una distinción entre la controversia relacionada con el *status* patronal y la de responsabilidad por el accidente. Sobre el particular, en el caso *Nieves Dairy Farm v. Corp. del Fondo del Seguro del Estado, supra*, a la página 261, el Tribunal Supremo citando el caso *Santiago Mitchell v. F.S.E., supra*, a la nota alcalce número 3, a la página 396, expuso lo siguiente:

*"No obstante la relación antes explicada, la Ley claramente diferencia ambas controversias.* **En cuanto a la de status patronal, el Fondo tiene jurisdicción original para determinar si un patrono está asegurado. Si el patrono no está conforme con la determinación del Fondo, puede acudir en apelación ante la Comisión Industrial,** *según el procedimiento establecido en el Art. 10 de la Ley, 11 L.P.R.A. sec. 11. En el procedimiento apelativo ante la Comisión Industrial, las partes son el patrono y el Fondo.* **Al contrario, la controversia sobre responsabilidad por un accidente de un patrono no asegurado es resuelta, en primera instancia, por la Comisión Industrial, según lo dispuesto por el antes citado Art. 15,** *(11 L.P.R.A. sec. 16), siendo inoficiosa cualquier determinación que haga el Fondo al respecto, y las partes, son el obrero lesionado y el patrono. Ambos procedimientos se adjudican por separado,* **resolviéndose primeramente, si es necesario, la controversia sobre status patronal y luego, si también es necesario, la de responsabilidad por el accidente.**

**Las claras diferencias que la Ley establece entre ambas controversias nos impiden que por fiat judicial apliquemos por analogía el esquema adjudicativo de una a la otra.**"* (Énfasis nuestro.)

## III

Los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializados porque las conclusiones y determinaciones de los organismos administrativos merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial. *Comisionado de Seguros de Puerto Rico v. Primelife Partners Inc.,* 162 D.P.R.___, **2004 JTS 105**, Opinión de 28 de junio de 2004, a la página 1252; *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116, 122-123 (2000); *Misión Industrial v. Junta de Planificación,* 145 D.P.R. 908, 929-930 (1998). Este ejercicio de revisión judicial de las actuaciones administrativas, por lo tanto, versa exclusivamente sobre: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. 3 L.P.R.A. sec. 2175; *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico,* 151 D.P.R. 269, 281 (2000).

La revisión judicial sólo determina si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción. *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263, 280 (1999); *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999). Si las interpretaciones de la agencia especializada son razonables y consecuentes con el propósito legislativo de su ley habilitadora, el tribunal debe abstenerse de intervenir con ellas. *Costas, Piovannetti v. Caguas Expressway,* 149 D.P.R. 881, 889 (2000).

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implanta. *Torres v. J. Exam. Ing. Arq. y Agrim.,* 161 D.P.R. __, **2004 JTS 71**, a la página 972, Opinión de 27 de abril de 2004, *O.E.G. v. Rodríguez y otros,* 158 D.P.R.___, **2003 JTS 51,** a la página 798, Opinión de 1 de abril de 2003; *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra,* a las páginas 283-284. Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. *Misión Industrial v. Junta de Planificación,* 146 D.P.R. 64, 132-133 (1998). Por lo tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. *T-JAC Inc. v. Caguas Centrum Limited, supra,* a las páginas 80-81.

## IV

El Dr. Rivera planteó, en síntesis, que la Comisión optó por resolver el caso a pesar de que entendía que era necesario señalar otra vista para escuchar la prueba del patrono y citar a los testigos de las partes. Añadió que en este caso nunca estuvo en controversia la relación obrero-patronal ni el status patronal, ya que ambos fueron estipulados. Como cuestión de hecho, nunca apeló la determinación del Administrador en la que se le declaró patrono no asegurado. Inclusive, aceptó que cuando despidió a Amador no había pagado la póliza del F.S.E., por lo tanto era un patrono no asegurado. Según el Dr. Rivera, ante estos hechos, la Comisión sólo tenía que resolver la controversia sobre responsabilidad y compensabilidad del accidente, si en efecto es que ocurrió alguno. Por otro lado, el Dr. Rivera planteó que la Comisión, sin escuchar su prueba, dejó sin efecto sus alegaciones, las cuales se limitaban a reclamar que no hubo un accidente compensable y que de haber ocurrido no tuvo relación causal alguna con los deberes normales de su puesto.

En su escrito, el F.S.E. planteó que la Comisión había errado al emitir Resolución sin haberle dado la oportunidad al Dr. Rivera de presentar su prueba, en contra de lo que había expresado durante la vista de que iba a decretar la continuación de los procedimientos para la presentación de la prueba del patrono. También que la Comisión erró al devolver el caso a la jurisdicción del F.S.E. para que se continuaran con los procedimientos.

El F.S.E. expuso que, conforme a la ley y a la jurisprudencia, lo correcto es que la Comisión resuelva la controversia sobre la responsabilidad de accidente y si el caso es compensable o no.

En el caso de marras, la Comisión, mediante la Resolución de 8 de agosto de 2005, concluyó que ni el

Artículo 10 ni el Artículo 15 de la Ley de Compensaciones le otorgaban jurisdicción original para adjudicar controversias de compensabilidad. A base de lo anterior, dicho organismo administrativo determinó que no tenía jurisdicción para revisar la decisión del Administrador sobre estatus patronal, puesto que el Dr. Rivera no apeló la misma dentro del término jurisdiccional provisto por ley. También dejó sin efecto las alegaciones del Dr. Rivera en la que negaba: la responsabilidad por el accidente y que hubiera una relación obrero-patronal; en consecuencia, determinó que a la fecha del alegado accidente existía una relación obrero-patronal. Finalmente, la Comisión devolvió el caso al F.S.E. para que se continuara con los procedimientos.

Conforme a los hechos del caso ante nos, el F.S.E. determinó que, al momento de la ocurrencia del alegado accidente, el Dr. Rivera era un *"patrono no asegurado"* porque no había pagado la póliza del seguro obrero-patronal. El Dr. Rivera no apeló la decisión del F.S.E., por lo que advino final y firme. Ante estos hechos, el F.S. E. elevó el expediente a la Comisión, ya que se trataba de un patrono no asegurado que negaba la responsabilidad por el accidente.

Según indicáramos en este escrito, en los casos de patronos no asegurados que no aceptan la responsabilidad por el accidente, las partes en el proceso administrativo son el patrono y el obrero lesionado, limitándose el F.S.E. a referir el caso a la Comisión para su adjudicación.

En estos casos, la controversia sobre responsabilidad del accidente negada por el patrono declarado no asegurado, debe ser adjudicada por la Comisión en jurisdicción original, conforme establece el Artículo 15 [13] de la Ley de Compensaciones, *supra.*

Ciertamente, en el presente caso, el Dr. Rivera era un patrono no asegurado que había negado la responsabilidad del accidente, por lo que la Comisión tenía jurisdicción para resolver dicha controversia. Ello así, erró la Comisión al determinar que no tenía jurisdicción para resolver el caso y devolver el mismo al F.S.E.

## V

Por los fundamentos antes expresados, revocamos la resolución recurrida. Le ordenamos a la Comisión Industrial de Puerto Rico la continuación de los procedimientos en el caso conforme a lo aquí discutido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 91

**1.** De la Resolución se desprende que fue emitida el 8 de noviembre de 2005, y notificada y archivada en autos el 10 de noviembre de 2005. No obstante, del expediente surge que el sobre de correo en el que se le notificó al Dr. Rivera la referida resolución tenía matasello con fecha de 14 de noviembre de 2005. Véase el Apéndice del recurso a la página 45.

Como es sabido, si la fecha del archivo en autos de copia de la notificación de la resolución u orden es distinta a la del depósito en el correo de dicha notificación, el término de treinta (30) días para presentar el recurso de revisión se computa desde la fecha del depósito en el correo y no desde el archivo en autos de copia de la notificación. Véase Regla 57 del Reglamento del Tribunal de Apelaciones; *Hospital Dr. Domínguez, Inc. v. Ryder Memorial Hospital, Inc.,* 161 D.P.R. \_\_, **2004 JTS 44,** a las páginas 760-761, Opinión de 4 de marzo de 2004.

**2.** Véase el Apéndice del recurso a la página 54.

**3.** *Id.*, a la página 49.

**4.** Del expediente surge un recibo de pago con fecha de 23 de junio de 1994 que acredita que en esa fecha el Dr. Rivera pagó

la póliza del F.S.E. luego de haber despedido a Amador. Véase el Apéndice del recurso a la página 72.

**5.** Véase el Apéndice del recurso a la página 46.

**6.** Véase el Apéndice del recurso a la página 64.

**7.** La Ley Núm. 63 de 1 de julio de 1996 renumeró los artículos de la Ley del Sistema de Compensaciones por Accidentes del Trabajo. A los fines de evitar cualquier confusión, utilizaremos la enumeración original y, a su vez, haremos referencia a la enumeración vigente según sea el caso. Cabe señalar que, el Artículo 10 se renumeró como el Artículo 9. Mientras que el Artículo 15 se renumeró como el Artículo 13.